## PEOPLE v. LUKE.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

1. PLEADING—DEMURRER—ADMISSION BY.

The allegations of a complaint must be taken as true for the purpose of a demurrer thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 525–534.]

2. FOOD—MISBRANDING—STATUTES CONSTRUED.

Agricultural Law, Laws 1903, p. 1191, c. 524, § 164, prohibits the sale, etc., of adulterated or misbranded food, and defines food as including articles used for food, whether simple, mixed, or compound. Under Section 165 (page 1191) an article is misbranded, when it is an imitation of and offered under the name of another article, or where the package or label bears a false or misleading statement as to the ingredients, etc., except that an article not containing any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the cases of mixtures or compounds which may be known as articles of food under their own names, and not included in. the first definition of misbranded articles, or in the case of articles labeled, etc., so as to plainly indicate that they are mixtures, etc., provided that the same be labeled, etc., so as to show the constituents thereof. Held, that it is not permissible to sell, etc., an imitation under the distinctive name of another food, nor to label or brand an article of food so as to falsely indicate that it contains certain ingredients in certain proportions, notwithstanding the exceptions stated in section 165; and hence defendant violated the statute by selling, etc., tomato catsup labeled as containing no artificial color, whereas it did, as containing one-tenth of soda benzoate, whereas it contained twenty-two one-hundredths of 1 per cent. thereof, and where it contained benzoic acid, not mentioned in the label.

Appeal from Trial Term, Erie County.

Action by the people of the state of New York against Louis Luke

for a penalty for violating the agricultural law. From a judgment dismissing the complaint, the people appeal. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Maulsby Kimball, for the People.
James Harmon, for respondent.

McLENNAN, P. J. The sole question presented by this appeal is: Does the complaint state facts sufficient to constitute a cause of action? It is alleged:

"Third. That on or about the 14th day of December, 1905, at his place of business in the city of Buffalo, county of Erie, state of New York, the above-named defendant sold, offered for sale, and exposed for sale an article of food named and designated as 'tomato catsup,' which catsup was labeled as follows: 'Prepared from whole, ripe tomatoes, no artificial color, and contains one-tenth (1/10) of soda benzoate.' That such catsup, branded and labeled as aforesaid, was adulterated and misbranded, in that same contained benzoic acid and was artificially colored, and that, instead of containing one-tenth of soda benzoate, it contained twenty-two one hundredths of 1 per cent. thereof, all of which was and is in contravention and violation of sections 164 and 165 of the agricultural law [Laws 1903, p. 1191, c. 524], being chapter 33 of the General Laws of the state of New York."

Such allegations must, for the purposes of this appeal, be taken to be true. Section 164 of the agricultural law provides:

"No person or persons, firm, association or corporation shall within this state manufacture, produce, sell, offer or expose for sale any article of food which is adulterated or misbranded within the meaning of this act. The term 'food' as used herein shall include all articles used for food, confectionery or condiments by man, whether simple, mixed or compound."

The language of the section is broad and comprehensive, and it is clear that the acts alleged to have been done by the defendant fall within its condemnation, unless permitted by section 165 of the agricultural law. Section 165 defines the meaning of the word "misbranded." It provides:

" * * * An article of food shall be deemed to be misbranded: First. If it be an imitation of or offered for sale under the distinctive name of another article. * * * Third. If the package containing it or its label shall bear any statement regarding the ingredients or the substances contained therein, which statement shall be false or misleading in any particular, or if the same is falsely branded as to the state or territory in which it is manufactured or produced: Provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases: First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not included in definition first of misbranded articles of food in this section. Second. In the case of articles labeled, branded or tagged so as to plainly indicate that they are mixtures, compounds, combinations, imitations, or blends: Provided, that the same shall be labeled, branded or tagged so as to show the character and constituents thereof. * * *"

The fair meaning of the section is that any article of food is misbranded when it is an imitation of and offered for sale under the name of another article, and we think neither of the exceptions has any ap-

plication. To illustrate: Oleomargarine is an imitation of butter. If it is branded and sold as "butter," which is the distinctive name of another article of food, the statute, we think, must be held to prohibit the offering for sale of such article of food in such manner. The provision in the section, marked "Third," prohibits the seller or person offering for sale from putting any statements upon the label regarding the ingredients contained therein which are false or misleading in any particular. We think neither of the exceptions to which attention has been called in any manner permits the seller or the person offering for sale to put upon the label statements which are false or misleading in any particular. In other words, we conclude that a person who offers an imitation of food for sale under the distinctive name of another article of food is liable under the agricultural law. To illustrate: The person who sells or offers for sale oleomargarine under the name of "butter" is guilty of a violation of the statute. We also consider that, if any package or its label shall bear any statements regarding the ingredients or the substances contained therein which are false or misleading, the person so selling or offering such package for sale is guilty under the statute. This conclusion is clearly correct, unless the exceptions which have been quoted permit another course of action to be followed. It is further provided in the section:

"That an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases."

Then we come to the first exception, which provides in substance that in cases of mixtures or compounds which may be known as articles of food under their own distinctive names, and not included in definition first of misbranded articles of food, which is where an imitation is sold for the real article, the section does not apply. In other words, under that exception it is clear that a person might manufacture, sell, or offer for sale oleomargarine, if it did not contain poisonous or deleterious ingredients, provided it was sold as oleomargarine, and not as butter.

So far as the second exception is concerned, it is provided that a food shall not be deemed to be misbranded in case the article of food is labeled, branded, or tagged so as to indicate that it is a mixture, compound, imitation, or blend, provided the same shall be labeled, branded, or tagged so as to show the character and constituents thereof. So that we conclude that the fair meaning and interpretation of the statute is that it is not permissible to sell or offer for sale an imitation of a food under the distinctive name of another food under any circumstances whatsoever. The case of selling oleomargarine as butter illustrates the proposition as well as any other, and we think is clearly prohibited by the statute. The other act which is prohibited absolutely by the statute is the labeling or branding of an article of food falsely and in such manner as to indicate that it contains certain ingredients in certain proportions, contrary to the fact; and in such case we consider that it is entirely immaterial whether the imitation or compound offered for sale contains ingredients deleterious to health or not. The exceptions in this section in no manner affect either of

those propositions. By such exceptions it is permissible for a party to sell or offer for sale "Quaker Oats," if it contains no poisonous or deleterious ingredients, or if no label or brand is placed thereon which assumes to give the ingredients of such article of food. But, if the seller or person offering to sell assumes by label to give the ingredients of which such "Quaker Oats" is composed, he must state them truthfully, else he is guilty of a violation of the statute.

Where articles of food are labeled, branded, or tagged so as to indicate that they are compounds, combinations, imitations, or blends, there is no liability under the statute, provided the same shall be labeled, branded, or tagged so as to show the character and constituents thereof. Thus construed, we think the provisions of the statute are consistent, are reasonable and beneficial, and, if we are right, it follows that the defendant violated the statute, because the statement put upon the label upon the goods in question was false, in that it stated that it contained no artificial color, when in fact it did, and in that it stated that it contained one-tenth of soda benzoate, whereas it contained twenty-two one-hundredths of 1 per cent. thereof, and also in that the article in question contained benzoic acid, not mentioned in the label.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.