CRESCENT MFG. CO. v. WILSON, State Com'r of Agriculture.

(District Court, N. D. New York. May 12, 1916.)

1. COMMERCE ⟨key⟩8—POWER OF STATE TO MAKE REGULATIONS—DISCLOSURE OF INGREDIENTS.

Congress not having legislated on that subject, it is within the police power of a state to require food products sold therein to be so marked as to disclose their ingredients, in addition to the requirements of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1913, §§ 8717–8728), so long as the formula for their preparations or compounding is not required to be disclosed.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⟨key⟩8.]

2. COMMERCE ⟨key⟩8—STATE REGULATIONS—CONSTRUCTION OF STATUTE.

Agricultural Law (Consol. Laws N. Y. c. 1), as amended by Laws 1914, c. 494, in case of mixtures and combinations forming proprietary food products, and which do not contain any added poisonous or deleterious ingredient, compels the disclosure by label, brand, or tag of their character and constituents, and in such respect is not in conflict with the federal Food and Drugs Act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⟨key⟩8.]

In Equity. Suit by the Crescent Manufacturing Company against Charles S. Wilson, Commissioner of the Department of Agriculture of the State of New York. On application for preliminary injunction. Denied.

Application for a preliminary injunction on order to show cause. This is a suit in equity to restrain the defendant, commissioner of agriculture of the

state of New York from carrying out and enforcing a threatened course of action having for its object, it is alleged, the exclusion from the state of New York of "Mapleine," a food product made by complainant in the state of Washington, and extensively transported in interstate commerce into the state of New York, and there supplied to complainant's customers.

William T. Byrne, Albany, N. Y., for complainant.

Egburt E. Woodbury, Atty. Gen., of Albany, N. Y. (Charles M. Stern, Deputy Atty. Gen., of Albany, N. Y., of counsel), for defendant.

RAY, District Judge. The complainant is a corporation of the state of Washington, U. S. A., and now and for some years has been engaged in the manufacture and sale of various food products, including spices, flavoring extracts, coffee, baking powder, and a proprietary food product known and sold as "Mapleine," and labeled:

"Crescent (Trade-Mark) Crescent Mapleine. Reg. U. S. Pat. Office. Mapleine. Contains no maple sugar, syrup nor sap, but produces a taste similar to maple. Made only by Crescent Mfg. Co., Seattle, U. S. A."

The registered trade-mark consists of a crescent and the words therein "(Trade-Mark) Crescent Mapleine." It is alleged, and not denied, that this Mapleine is a food product, and that it contains no ingredient in any way unwholesome, or injurious, or deleterious to health; is not an imitation of, or offered for sale under, the distinctive name of another article; is not mixed, colored, powdered, or stained in a manner whereby damage or inferiority is concealed, so that when sold or offered for sale it deceives or tends to deceive the purchaser; that the package and carton containing it does not bear any statement regarding the ingredients or the substances contained therein which is false or misleading in any particular; and that the same is branded in such manner as to show the city and state in which it is manufactured and produced. It is also alleged, and not denied, that the complainant is the sole owner and proprietor of the trade formula for compounding same, and that the disclosure of such trade formula would operate to take away the complainant's property therein without due process of law. It is also alleged that the complainant, in manufacturing and selling such food product, and in transporting same in interstate commerce, has complied and now complies with the several acts of Congress relating thereto.

The defendant, Charles S. Wilson, the commissioner of the department of agriculture of the state of New York, claims to justify and defend his action thus far taken, and his threatened action, on the ground that "Mapleine," or "Crescent Mapleine," is not a "distinctive name," but is made up of the word "Maple" with a suffix "ine" tending to leave the impression that the substance, whatever it may be, is the product of "maple"; also that, this "Mapleine" being a compound or mixture and not falling within any of the exceptions to the law, the complainant should label or brand or tag the containers or cartons so as to show the actual *character and constituents* thereof. I do not see that it is proposed to compel the complainant to disclose its formula for mixing and compounding these ingredients. This

disclosure of the constituents and their character is exactly what the complainant does not desire or wish to do, as such disclosure, it contends, would destroy the value of its secret formula and its trade in such article. The chemist employed by the state has made an analysis of "Mapleine," and says it contains alcohol by volume 19.87 per cent., solids 29.8 per cent., and specific gravity of 1.097. He does not state further as to the contents, but there is no claim or contention that there is any deleterious, or unhealthful, or unwholesome ingredient contained therein, or that it is not a food product. The main claim is that the name tends to give the impression it contains or is made from "maple," when it is not, and that the state in the exercise of its police power has the right to compel disclosure of the ingredients.

[1] It may be regarded as settled that the federal Constitution prohibits a state from regulating interstate commerce. Foote v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698. But it is also settled that "*Regulating* the sale of food for *domestic* animals is properly within the scope of the state police power, and the vendors of such food are not deprived of their property without due process of law by a regulation requiring disclosure of ingredients and minimum percentage of fat and proteins, disclosure of the *formula* for combination *not being required.*" Savage v. Jones, 225 U. S. 501, 528, 539, 32 Sup. Ct. 715, 56 L. Ed. 1182; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 Sup. Ct. 784, 56 L. Ed. 1197. If the state may do this as to foods for domestic animals, it may do the same as to foods for human consumption. "Where an act of Congress, relating to a subject on which the state may act also, *limits* its prohibitions, it leaves the subject open to state regulation as to the prohibitions which are unenumerated." Savage v. Jones, supra. "Although the Food and Drugs Act prohibits misbranding it does not require publication of ingredients, and in that respect the field is left open for state legislation." Savage v. Jones, supra; Anderson v. Pacific Coast S. Co., 225 U. S. 187, 32 Sup. Ct. 626, 56 L. Ed. 1047 (pilotage laws); Atlantic Coast Line v. Georgia, 234 U. S. 280, 34 Sup. Ct. 829, 58 L. Ed. 1312 (safety devices); Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. 501, 59 L. Ed. 835 (citrus fruits). In Foote v. Maryland, supra, the court says:

"The Constitution prohibits a state from regulating interstate commerce, but at the same time authorizes the collection of the necessary expenses of its inspection laws with the result that interstate commerce is to that extent lawfully burdened. Inspection is intended to determine the weight, *condition,* quantity, and quality of merchandise to be sold within or beyond the state's borders."

If it be proper for the state to ascertain the *quality,* why may it not know the *constituents?* In Sligh v. Kirkwood, supra, a law of the state of Florida (chapter 6236, § 1, Laws Fla. 1911 [Comp. Laws 1914, § 1143p]) prohibits the delivery for shipment of citrus fruits immature or otherwise unfit for consumption, and by the Supreme Court of the United States this law was held not unconstitutional as an attempt to regulate interstate commerce, and also that:

"The provisions of the federal Food and Drugs Act relating to shipment in interstate commerce of fruit in filthy, decomposed, or putrid condition do

*not apply to fruit unfit for consumption because green or immature. Congress has not covered the latter field."*

It would seem clear that Congress has not covered the field of disclosure of the ingredients of a food product designed for human consumption and moved or moving in interstate commerce from one state into the state of New York or any other state for sale there, and that the several states in the exercise of the police power are at liberty and free to legislate on that subject, and lawfully provide by law for a disclosure of the name of the ingredients entering into the composition or compounding of such food mixtures, so long as the disclosure of the formula for compounding such food mixture is not required.

The defendant also claims that the word "Mapleine" is not a distinctive name as applied to a food compound. I know of no food product known as or having the name or designation "maple." We have maple trees, sap of the maple trees or maple syrup, maple sugar or sugar of maple. Maple is the name of a genus of tree, and not the name of a food, and we have near a hundred of the species, such as the red, scarlet, or swamp maple tree, and the silver leaf maple. A regulation of the United States Department of Agriculture defines a distinctive name, saying:

"A distinctive name is a trade, arbitrary, or fancy name which clearly distinguishes a food product, mixture, or compound from any other food product, mixture, or compound."

In this case we have diversity of citizenship and an amount or value in controversy in excess of the sum of $3,000 exclusive of interest and costs, and the bill charges that the defendant is arbitrarily and unlawfully denouncing the complainant's trade in and sale of this food product in the state of New York as unlawful, and threatening its customers with suits and prosecutions if they continue to deal in or sell such product, and that defendant justifies such conduct on the sole ground that the complainant's food product, "Mapleine," is not so labeled as to show the various ingredients of the mixture. The defendant has no right, by virtue or color of his office, or otherwise, to interfere with complainant's sales of such food product, unless authorized so to do by some statutory authority, and to justify the conduct complained of it must appear that the defendant has the right under the laws of the state of New York to compel the disclosure of the ingredients composing all proprietary food products which are mixtures or compounds, combinations, imitations, or blends, placed on the market and sold or offered for sale in said state, irrespective of any claim of adulteration or misbranding, otherwise than by simply failing by label thereon to disclose the ingredients of the food compound. This is what this case comes to under the allegations of the bill and the answering affidavits.

[2] This leads us to a consideration of the New York Agricultural Law (chapter 494, Laws of 1914), and entitled "An act to amend the Agricultural Law in relation to adulterated or misbranded food." The title of the act indicates its purpose. It is intended to reach to misbranding and adulteration of food products. The act prohibits the sale or the offering or exposure for sale of "any article of food which

is adulterated or misbranded within the meaning of this article" (the law referred to). "Food" is defined to be all articles used for food, confectionery, or condiments, by man, whether simple, mixed, or compound. Section 201 of the act (Consol. Laws, c. 1) provides:

"*Definition of Adulterated or Misbranded Food.* * * * In the case of food an article shall be deemed to be adulterated:

"1. If any substance or substances has or have been mixed or packed with it so as to reduce or lower or injuriously affect its quality or strength, so that such product, when offered for sale, shall deceive or tend to deceive the purchaser.

"2. If any substance or substances has or have been substituted wholly or in part for the article, so that the product, when sold or offered for sale, shall deceive or tend to deceive the purchaser.

"3. If any valuable constituent of the article has been wholly or in part abstracted, so that the product, when sold or offered for sale, shall deceive or tend to deceive the purchaser.

"4. If it contains any added poisonous ingredient or any ingredient which may render such article injurious to the health of the person consuming it.

"5. If it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter.

"6. If it contains methyl or wood alcohol, in any of its forms, or any methylated preparation made from it.

"An article of food shall be deemed to be misbranded:

"1. If it be an imitation of or offered for sale under the distinctive name of another article.

"2. If it be mixed, colored, powdered or stained in a manner whereby damage or inferiority is concealed, so that such product, when sold or offered for sale, shall deceive or tend to deceive the purchaser.

"3. If the package containing it or its label shall bear any statement regarding the ingredients or the substances contained therein, which statement shall be false or misleading in any particular, or if the same is falsely branded as to the state or territory in which it is manufactured or produced or if it shall be contained in, or served in or from any bottle or receptacle falsely marked, labeled or branded as to the name of the person, persons or corporations manufacturing the same; provided, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

"First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names and not included in definition first or third of misbranded articles of food in this section.

"Second. In the case of articles labeled, branded or tagged so as to plainly indicate that they are mixtures, compounds, combinations, imitations or blends: provided, that the same shall be labeled, branded or tagged so as to show the character and constituents thereof: and provided further, that nothing in this article shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredients to disclose their trade formulas, except in so far as the provisions of this article may require to secure freedom from adulteration or imitation."

According to the bill of complaint there is no pretense by defendant of any act which will deceive or tend to deceive the purchaser of this food article, or of the adding of any poisonous or deleterious ingredient, or of any ingredient which may make same injurious to the health of the consumer, or that it contains any filthy decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food or that it is the product of any animal, or that it con-

tains methyl or wood alcohol in any of its forms, or any methylated preparation made from it. Therefore defendant makes no *claim* that the complainant's food product is adulterated. The bill of complaint alleges that defendant makes no claim that the food product is an imitation, or offered for sale under the distinctive name of another article, or that it is mixed, colored, powdered, or stained in any manner whereby damage or inferiority is concealed, so as to deceive or tend to deceive a purchaser.

According to the allegations of the complaint defendant does not claim that the package containing this food, or its label, bears any statement which is false or misleading in any particular, or that it is falsely branded as to the state or territory where produced, or that it is contained in any receptacle falsely marked, etc., as to the name of the manufacturer. Now comes the proviso that an article of food which does *not* contain any added poisonous or deleterious ingredients should *"not* be deemed to be adulterated or misbranded in the following cases": First, in the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under *their own distinctive names* and *not* included in definition first or third of misbranded articles of food in this section. Clearly this food product is sold under its own distinctive name, "Mapleine," and is not an imitation of or offered for sale under the distinctive name of another article. Clearly this food product is not included in definition third. Inasmuch as it does *not* contain any added poisonous or deleterious ingredient and being a mixture, compound or combination, it is not deemed adulterated if labeled, branded, or tagged so as to plainly indicate it is a mixture, compound, combination, imitation, or blend (and this is so labeled), except that in such case *(provided it would otherwise be deemed misbranded?)* it is not so regarded if labeled, branded, or tagged so as to show the *character and constituents thereof;* and it is then further provided that nothing in the act shall be construed as requiring or compelling proprietors or manufacturers of proprietary foods which contain no unwholesome added ingredients to disclose their trade formulas, *except in so far as the provisions of this article may require to secure freedom from adulteration or imitation.* It comes to the proposition whether or not a food mixture or compound *is regarded* as misbranded and *so declared* unless labeled so as to show *the character and constituents thereof* when the state commissioner of agriculture decides it is necessary to have a disclosure of the ingredients for the purpose of *securing* freedom from adulteration or imitation.

It seems to me clear that when the commissioner of the department of agriculture of the state of New York decides that a disclosure to him of the ingredients of a mixture constituting a proprietary food product on sale in the state of New York is necessary to secure freedom from adulteration or imitation he has the right and power to require such disclosure and to enforce his decision in all lawful ways. If the constituents of such a food product are disclosed, the formula, or mode and manner of mixing and proportions, is not necessarily disclosed to him, and certain it is that the chemical formula is not neces-

sarily disclosed. It may be and may not be in effect disclosed, but this is far from a disclosure to the general public by label.

I am of the opinion that the Agricultural Law of the state of New York has entered the domain of the adulteration and misbranding of food products, and has lawfully gone beyond what the Congress of the United States has done or attempted to do, and has provided that in the case of mixtures or compounds known as foods under their own distinctive names they are misbranded, if labeled, branded, or tagged so as to plainly indicate they are mixtures, compounds, combinations, imitations, or blends, but are not also so labeled, branded, or tagged as to show the character and constituents thereof, and declared that if this is not done such mixtures or compounds are deemed and declared misbranded, even when they contain no added poisonous or deleterious ingredients. True, the construction and wording of the statute is peculiar. It is not directly declared that food products made up of mixtures or compounds, or of combinations or blends, and containing no added poisonous or deleterious ingredient, shall be deemed misbranded unless so labeled, branded, or tagged as to show they are such, and also the character and the constituents thereof. If this was intended, it would have been easy to so say in clear and unambiguous terms. The requirement, if it exists, is found in the proviso declaring in what cases foods shall *not* be deemed misbranded. I do not find that the courts of the state of New York have construed this statute in this aspect, and my attention is not called to any decision on this particular question.

This statute is capable of two readings: (1) That an article of food which does not contain any added poisonous or deleterious ingredients, and hereinbefore declared adulterated or misbranded, shall not be deemed to be adulterated or misbranded in the case of articles labeled, branded, or tagged so as to plainly indicate that they are mixtures, compounds, combinations, or blends, in which case the same, if within the definition of adulterated or misbranded articles heretofore given, shall be labeled, branded, or tagged so as to show the character and constituents thereof or be deemed misbranded, and (2) after affirmatively defining misbranded articles, *except* that an article of food which does not contain any added poisonous or deleterious ingredients shall *not* be deemed to be adulterated or misbranded in the case of articles so labeled, branded, or tagged as to plainly indicate that they are mixtures, compounds, combinations, imitations, or blends, except or provided that in such case the same *shall be* labeled, branded, or tagged so as to show the character and constituents thereof or be deemed misbranded. This last construction would make it imperative that all food mixtures, compounds, combinations, imitations, and blends not containing added poisonous or deleterious ingredients be not only so labeled, branded, or tagged as to show they are mixtures, etc., but also the character and constituents thereof.

Again, the exceptions may be regarded as adding to the list of misbranded food combinations or compounds all mixtures, compounds, combinations, imitations, or blends so labeled, branded, or tagged as to show they are mixtures or compounds, etc., but which are not so

labeled as to show their character and constituents. This statute either declares what foods are misbranded, and then by exception declares what foods are not misbranded, if otherwise within the definition of misbranded food articles, or it first declares what foods are misbranded, and then provides by way of exception that certain foods are not misbranded, and then by way of another exception adds to the prior list of misbranded foods those which consist of mixtures, compounds, combinations, imitations, or blends which are *not* so labeled, branded, or tagged as to show the character and constituents thereof. If this is done, it is accomplished in a blind, back-handed, and equivocal manner, and not by plain language. If done, it is by inference, and we must read the statute as first declaring certain articles of food misbranded, and then as declaring that certain articles of food are not misbranded *"in the following cases,"* and then in one of those cases where the food is declared *not* misbranded declaring and enacting that it *is misbranded* unless it is (in the case of a mixture, etc.) so labeled, branded, or tagged as to show, not only that it is a compound or mixture, but the character and constituents thereof.

I am uncertain as to the construction that should be placed on this statute, but am constrained to the view that the New York statute, in the case of mixtures and combinations forming a proprietary food product and which do not contain any added poisonous or deleterious article compels the disclosure by label, brand, or tag of their character and constituents. This statute, as seen, is not in conflict with the federal statute. People v. Butler, 134 App. Div. 151, 118 N. Y. Supp. 849, and People v. Luke, 122 App. Div. 64, 68, 106 N. Y. Supp. 621, throw little, if any, light on the question involved here, although Judge McLennan, in People v. Luke, supra, 122 App. Div. 68, 106 N. Y. Supp. 624, does say:

"Where articles of food are labeled, branded, or tagged so as to indicate that they are compounds, combinations, imitations, or blends, there is no liability under the statute, provided the same shall be labeled, branded, or tagged so as to show the character and constituents thereof."

If I am correct in my conclusions, the defendant in his official capacity has the right to enforce the law by notice, demand, and appeals to the courts, so long as he does not seek to compel a disclosure of the formula, and only seeks to compel the affixing of a brand or tag which discloses the character and constituents of the mixture.

I find nothing in McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann. Cas. 1915A, 39, in conflict with this conclusion. There it was held:

"Conceding to the state the authority to make regulations consistent with the federal law for the further protection of its citizens against impure and misbranded food and drugs, we think to permit such regulation as is embodied in this statute is to permit a state to discredit and burden legitimate federal regulations of interstate commerce, to destroy rights arising out of the federal statute which have accrued both to the government and the shipper, and to impair the effect of a federal law which has been enacted under the constitutional power of Congress over the subject.

"To require the removal or destruction before the goods are sold of the evidence which Congress has, by the Food and Drugs Act, as we shall see, provided may be examined to determine the compliance or noncompliance with

the regulations of the federal law, is beyond the power of the state. The Wisconsin act which permits the sale of articles subject to the regulations of interstate commerce only upon condition that they contain the exclusive labels required by the statute is an act in excess of its legitimate power. * * *

"The legislative means provided in the federal law for its own enforcement may not be thwarted by state legislation having a direct effect to impair the effectual exercise of such means.

"For the reasons stated, the statute of Wisconsin, in forbidding all labels other than the one it prescribed, is invalid, and it follows that the judgments of the state court affirming the convictions of the plaintiffs in error for selling the articles in question without the exclusive brand required by the state, must be reversed."

Injunction denied.

⚼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes