SLIGH *v.* KIRKWOOD, SHERIFF OF ORANGE COUNTY, FLORIDA.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 185. Argued March 9, 10, 1915.—Decided April 5, 1915.

It is within the police power of the State to make it a criminal offense to deliver for shipment in interstate commerce citrus fruits then and there immature and unfit for consumption.

While Congress has exclusive power to regulate interstate commerce, and the State may not, when Congress has exerted that power, in-

terfere therewith, even in the otherwise just exercise of its police power, the State may in such a case act until Congress does exert its authority, even though interstate commerce may be incidentally affected.

Limitations on the police power are hard to define; in its broadest sense that power includes all legislation and almost every function of civil government; it embraces regulations designed to protect and promote public convenience, property, welfare, safety and health.

This court takes judicial notice of the fact that the raising of citrus fruits is one of the great industries of the State of Florida.

A State may protect its reputation in foreign markets by prohibiting the exportation of its products in such an improper form as would have a detrimental effect on its reputation.

This court will not consider the effect of a construction of a statute prohibiting the exportation of fruit when immature and unfit for consumption as food as prohibiting its export while immature for other commercial purposes than that of food until the state court has so construed it.

The provisions in the Federal Food and Drugs Act relating to shipment in interstate commerce of fruit in filthy, decomposed, or putrid condition do not apply to fruit unfit for consumption because green or immature. Congress has not covered the latter field.

Chap. 6236, § 1, Laws of Florida, of 1911, prohibiting the delivery for shipment of citrus fruits immature or otherwise unfit for consumption is not unconstitutional as an attempt to regulate interstate commerce.

65 Florida, 123, affirmed.

THE facts, which involve the constitutionality under the commerce clause of the Federal Constitution of a statute of Florida prohibiting the sale or shipment of citrus fruits which are immature or otherwise unfit for consumption, are stated in the opinion.

*Mr. Charles B. Robinson*, with whom *Mr. E. J. L'Engle* was on the brief, for plaintiff in error:

Section 1 of Chapter 6236, in so far as the same applies to interstate shipments, is in conflict with and contravenes § 8, Art. I, of the Federal Constitution, which provides that Congress shall have the power to regulate

commerce with foreign nations and among the several States and with the Indian tribes.

The plaintiff in error was not and could not legally be held in custody for the alleged violation of that act, upon and for an alleged shipment of citrus fruits out of and beyond the limits of the State, the validity of said section being denied and drawn in question on the ground that it is repugnant to and in contravention of the commerce clause of the Federal Constitution.

In support of these contentions, see *Stone* v. *Mississippi*, 101 U. S. Sup. Ct. 814; *Adams Expr. Co.* v. *New York*, 232 U. S. 14; *Kansas City &c. Ry.* v. *Kaw Valley District*, 233 U. S. 75; *Leisy* v. *Harden*, 135 U. S. 100; *S. C.*, 34 Law Ed. 128; *Minnesota Rate Cases*, 230 U. S. 352; *Bowman* v. *Chi. & N. W. R. R.*, 125 U. S. 479; *Vermont* v. *Peet*, 80 Vermont, 449; *S. C.*, 68 Atl. Rep. 661; *S. C.*, 14 L. R. A. N. S. 677.

*Mr. Charles B. Parkhill* for defendant in error:

Section 1, Chapter 6236 of the Laws of Florida, 1911, is constitutional and a valid exercise of the police power of the State. It is designed to promote the public health, and the police power of the State embraces regulations for that purpose. *Wilkerson* v. *Roher*, 140 U. S. 545.

The regulation of food stuff has in view the protection of health. Freund Police Power, Chapter 28, 232.

The term "provisions" means "food." Oranges are highly nutritious and are food. *State* v. *Angello*, 71 N. H. 224; 6 Words & Phrases, 5754.

Any substance which, taken into the body, is capable of sustaining or nourishing the living is food. 13 Am. & Eng. Encl. (2d ed.) 729; 3 Words & Phrases, 2856; *Arbuckle* v. *Blackburn*, 113 Fed. Rep. 616, 622.

The term "fruit" includes oranges. *Humphreys* v. *Union Ins. Co.*, 12 Fed. Cas. 876, 880; 4 Words & Phrases, 2994.

One of the informations filed against the plaintiff in error, covers citrus fruits, which are not only immature, but otherwise unfit for consumption. Clearly this statute is designed to protect the public health. *People* v. *Chiperly*, 101 N. Y. 634.

The statute is not in contravention of the commerce clause of the Federal Constitution. It does not seek to limit, regulate and control interstate commerce.

To constitute interstate commerce there must be an article or commodity, the subject of commerce, and destined to pass from one State to another. Only such commodities as may lawfully become the subjects of purchase, sale or exchange, are articles of interstate commerce, within the protection of the commerce clause of the Constitution. *Turner* v. *Maryland*, 107 U. S. 17.

The State of Florida has a right to say what shall be lawful, merchantable citrus fruits.

Articles which, on account of their existing condition, would bring and spread disease or pestilence, and meats or other provisions unfit for human use, are not legitimate subjects of trade and commerce, and are not within the protection of the commerce clause of the Constitution, but fall within the police power of the State. 17 Am. & Eng. Encl. (2d ed.) 67, 68.

When the legislature of Florida prohibits the sale or shipment of immature citrus fruits, or fruits unfit for consumption, it thereby prevents said citrus fruits from becoming an article of interstate commerce. *People* v. *Hesterberg*, 211 U. S. 31; *Dent* v. *West Virginia*, 129 U. S. 114; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Purity Extract Co.* v. *Lynch*, 226 U. S. 192; *State* v. *Harrub*, 95 Alabama, 176.

The power of Congress to regulate interstate commerce does not interfere with the right of the State to prohibit its own property from becoming an article or commodity of interstate commerce, and a statute may take private

property out of the commerce clause of the Constitution, may outlaw such private property, if it be inherently bad or liable to affect the health, prosperity or welfare of the people of the State.

The police power of a State embraces regulations designed to promote the public convenience or the general prosperity or the public welfare, as well as those designed to promote the public safety or the public health. *Chicago, B. & Q. R. R.* v. *Drainage Com'rs*, 200 U. S. 561; *Lake Shore Ry.* v. *Ohio*, 173 U. S. 285; *Atlantic Coast Line* v. *Coachman*, 59 Florida, 130; *Commonwealth* v. *Savage*, 29 N. E. Rep. 468.

Where a law is for the protection of life, liberty and prosperity or the general welfare, there is no limitation upon the power of the legislature except as is found in the Constitution. *Hawthorn* v. *People*, 109 Illinois, 302.

The police power extends to regulations to preserve the reputation of the States in foreign markets. Freund, Police Power, § 276; *Critsman* v. *Northup*, 8 Cow. (N. Y.) 46.

The legislature may have known that immature citrus fruits, or citrus fruits unfit for consumption, shipped beyond the limits of the State of Florida would destroy the reputation of this important product of the State in the markets of the world. The legislature may have also known that the taking of immature citrus fruits from the trees would injure the trees and thus hurt the prosperity of the people of the State. The legislature may have known that the sale of immature oranges might cause the sale of immature and poor seed for the planting of orange groves, and thus hurt the prosperity of the State. *Plumley* v. *Massachusetts*, 155 U. S. 461; *Sherlock* v. *Alling*, 93 U. S. 99; *Dent* v. *West Virginia*, 129 U. S. 114.

The provisions of the act of 1911 bear a reasonable relation to the evil sought to be cured, and this court will uphold same. *Eubank* v. *Richmond*, 226 U. S. 137. *State* v. *Peet*, 80 Vermont, 449, distinguished.

MR. JUSTICE DAY delivered the opinion of the court.

A statute of the State of Florida undertakes to make it unlawful for anyone to sell, offer for sale, ship, or deliver for shipment, any citrus fruits which are immature or otherwise unfit for consumption.[1]

Plaintiff in error, S. J. Sligh, was charged by information containing three counts in the Criminal Court of Record in Orange County, Florida, with violation of this statute. One of the counts charged that Sligh delivered to an agent of the Seaboard Air Line Railway Company, a common carrier, for shipment to Winecoff & Adams, Birmingham, Alabama, one car of oranges, which were citrus fruits, then and there immature and unfit for consumption. Upon petition for writ of *habeas corpus* in the Circuit Court of Florida for Orange County, the court refused to order the release of Sligh, and remanded him to the custody of the Sheriff. Upon writ of error to the Supreme Court of Florida, that judgment was affirmed (65 Florida, 123), and the case is brought here.

The single question is: Was it within the authority of the State of Florida to make it a criminal offense to deliver for shipment in interstate commerce citrus fruits,—oranges in this case,—then and there immature and unfit for consumption?

It will be observed that the oranges must not only be immature, but they must be in such condition as renders

---

[1] "Section 1. That it shall be unlawful for any one to sell, offer for sale, ship or deliver for shipment any citrus fruits which are immature or otherwise unfit for consumption, and for any one to receive any such fruits under a contract of sale, or for the purpose of sale, or of offering for sale, or for shipment or delivery for shipment. This section shall not apply to sales or contracts for sale of citrus fruits on the trees under this section; nor shall it apply to common carriers or their agents who are not interested in such fruits and who are merely receiving the same for transportation." Chap. 6236, Laws of Florida of 1911.

them unfit for consumption; that is, giving the words their ordinary signification, unfit to be used for food. Of course, fruits of this character, in that condition, may be deleterious to the public health, and, in the public interest, it may be highly desirable to prevent their shipment and sale. Not disputing this, the contention of the plaintiff in error is that the statute contravenes the Federal Constitution in that the legislature has undertaken to pass a law beyond the power of the State, because of the exclusive control of Congress over commerce among the States, under the Federal Constitution.

That Congress has the exclusive power to regulate interstate commerce is beyond question, and when that authority is exerted by the State, even in the just exercise of the police power, it may not interfere with the supreme authority of Congress over the subject; while this is true, this court from the beginning has recognized that there may be legitimate action by the State in the matter of local regulation, which the State may take until Congress exercises its authority upon the subject. This subject has been so frequently dealt with in decisions of this court that an extended review of the authorities is unnecessary. See the *Minnesota Rate Cases*, 230 U. S. 352.

While this proposition seems to be conceded, and the competency of the State to provide local measures in the interest of the safety and welfare of the people is not doubted, although such regulations incidentally and indirectly involve interstate commerce, the contention is that this statute is not a legitimate exercise of the police power, as it has the effect to protect the health of people in other States who may receive the fruits from Florida in a condition unfit for consumption; and however commendable it may be to protect the health of such foreign peoples, such purpose is not within the police power of the State.

The limitations upon the police power are hard to define,

and its far-reaching scope has been recognized in many decisions of this court. At an early day it was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the State, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the State. *New York* v. *Miln,* 11 Pet. 102, 139. The police power, in its broadest sense, includes all legislation and almost every function of civil government. *Barbier* v. *Connolly,* 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. *Camfield* v. *United States,* 167 U. S. 518, 524. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. *Chicago &c. Railway* v. *Drainage Commissioners,* 200 U. S. 561, 592. In one of the latest utterances of this court upon the subject, it was said: "Whether it is a valid exercise of the police power is a question in the case, and that power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity. . . . And further, 'It is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.'" *Eubank* v. *Richmond,* 226 U. S. 137, 142.

The power of the State to prescribe regulations which shall prevent the production within its borders of impure foods, unfit for use, and such articles as would spread disease and pestilence, is well established. Such articles,

it has been declared by this court, are not the legitimate subject of trade or commerce, nor within the protection of the commerce clause of the Constitution. "Such articles are not merchantable; they are not legitimate subjects of trade and commerce. They may be rightly outlawed as intrinsically and directly the immediate sources and causes of destruction to human health and life. The self-protecting power of each State, therefore, may be rightfully exerted against their introduction, and such exercises of power cannot be considered regulations of commerce prohibited by the Constitution." *Bowman* v. *Railway Company*, 125 U. S. 465, 489.

Nor does it make any difference that such regulations incidentally affect interstate commerce, when the object of the regulation is not to that end, but is a legitimate attempt to protect the people of the State. In *Geer* v. *Connecticut*, 161 U. S. 519, a conviction was sustained of one who was charged with having in his possession game birds, killed within the State, with the intention of procuring transportation of the same beyond state limits. This law was attacked upon the ground that it was a direct attempt to regulate commerce among the States. After discussing the peculiar nature of such property, and the power of the State over it, this court said (p. 534): "Aside from the authority of the State, derived from the common ownership of game and the trust for the benefit of its people which the State exercises in relation thereto, there is another view of the power of the State in regard to the property in game, which is equally conclusive. The right to preserve game flows from the undoubted existence in the State of a police power to that end, which may be none the less efficiently called into play, because by doing so interstate commerce may be remotely and indirectly affected. *Kidd* v. *Pearson*, 128 U. S. 1; *Hall* v. *De Cuir*, 95 U. S. 485; *Sherlock* v. *Alling*, 93 U. S. 99, 103; *Gibbons* v. *Ogden*, 9 Wheat. 1." In *New York, ex rel. Dilz*

v. *Hesterberg*, 211 U. S. 31, it was held that the State might punish the sale of imported game during the closed season in New York, notwithstanding such game was imported from abroad, and was thus beyond the control of the State, the law being sustained upon the ground that, while foreign commerce was incidentally affected, the State might prohibit the sale of such game in order to protect local game during the closed season; and to make such regulations effective required the prohibition of the sale of all game of that kind.

So it may be taken as established that the mere fact that interstate commerce is indirectly affected will not prevent the State from exercising its police power, at least until Congress, in the exercise of its supreme authority, regulates the subject. Furthermore, this regulation cannot be declared invalid if within the range of the police power, unless it can be said that it has no reasonable relation to a legitimate purpose to be accomplished in its enactment; and whether such regulation is necessary in the public interest is primarily within the determination of the legislature, assuming the subject to be a proper matter of state regulation.

We may take judicial notice of the fact that the raising of citrus fruits is one of the great industries of the State of Florida. It was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other States wherein such fruits find their most extensive market. The shipment of fruits, so immature as to be unfit for consumption, and consequently injurious to the health of the purchaser, would not be otherwise than a serious injury to the local trade, and would certainly affect the successful conduct of such business within the State. The protection of the State's reputation in foreign markets, with the consequent beneficial effect upon a great home industry, may have been within the legislative intent, and it certainly could not be

said that this legislation has no reasonable relation to the accomplishment of that purpose.

As to the suggestion that the shipment of such fruit may be legitimately made for commercial purposes, for the purpose of making wine, citric acid, and possibly other articles, it is sufficient to say that this case does not present any such state of facts, and of course the constitutional objection must be considered in view of the case made before the court, which was a delivery for shipment of oranges so immature as to be unfit for consumption. Whether such a case, as supposed, of shipment for commercial purposes, would be within the statute, would be primarily for the state court to determine, and it is not for us to say, as no such case is here presented.

It is pointed out in the opinion of the Supreme Court of Florida, and we repeat here, that no act of Congress has been called to our attention undertaking to regulate shipments of this character, which would be contravened by the act in question. As the Florida court says, the sixth subdivision of the Food and Drugs Act, if citrus fruits should be held to be within the prohibitions against vegetable substances, includes only such as are in whole or in part filthy, decomposed or putrid. Green or immature fruit, equally deleterious to health, does not seem to be within the Federal act. Therefore until Congress does legislate upon the subject, the State is free to enter the field. *Savage* v. *Jones*, 225 U. S. 501.

In the *Vermont Case*, referred to by counsel for plaintiff in error, *State of Vermont* v. *Peet*, 80 Vermont, 449, the act made it unlawful to ship without the State veal less than four weeks old when killed, and it was held to run counter to the Federal act and regulation upon the same subject.

We find no error in the judgment of the Supreme Court of Florida, and it is

*Affirmed.*