## DETWEILER et al. v. WELCH, Com'r of Agriculture of Idaho, et al.

No. 6305.

Circuit Court of Appeals, Ninth Circuit.

Dec. 23, 1930.

Turner K. Hackman, of Twin Falls, Idaho, for appellants.

W. D. Gillis, Atty. Gen., and Leon M. Fisk, Asst. Atty. Gen., for appellees.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from an order and decree dismissing a bill in equity to enjoin appellees from enforcing the provisions of chapter 115, Idaho Session Laws, 1929.

Appellants are engaged in growing potatoes upon their lands in Twin Falls county, Idaho, and in shipping such product to mar-

ket centers outside the state. The act referred to in the bill requires that when potatoes are offered for shipment within or outside of the state they shall be graded as "U. S. Fancy Idaho Potatoes," "U. S. No. 1 Idaho Selected Potatoes," "U. S. No. 2 Idaho Potatoes," "Idaho Potatoes," or "Cull Potatoes," and shall be packed in containers in conformity with certain prescribed rules. The act further provides that "when potatoes are shipped during the months of July, August and September, they may be packed in branded containers in conformity with the foregoing requirements, or they may be packed in plain bags at the option of the shipper, and may be shipped without being graded, but potatoes which are not graded must not be shipped in branded bags."

It is alleged in the bill that potatoes grown in the Twin Falls section of the state mature after October 1st of each year, while potatoes grown west of that section mature prior to that date. It is further alleged that the methods used by appellants in making sales of their potato product are: (a) In carload lots in their fields and cellars for shipment to points outside of the state. (b) By shipment in carload lots to points outside of the state, on consignment to warehousemen, brokers, and wholesale dealers. (c) By shipments in carload lots, accompanied by growers to points in other states.

Appellants challenge the constitutionality of the statute upon the following grounds:

(1) That it is a direct regulation of interstate commerce, places a burden thereon, and usurps the power vested in Congress by the Federal Constitution. (2) That it violates section 1 of the Fourteenth Amendment to the Constitution, in that it abridges the privileges of plaintiffs in contracting for the sale of potatoes of a wholesome character, which are based upon their intrinsic value as a product for human consumption. (3) That it deprives plaintiffs of their property without due process of law, in compelling them to sort, grade, and weigh the potatoes of varying diameters as a condition precedent to sale, and thereby incurring expense and costs of marking, grading, and placing the potatoes in inferior grades. (4) That the plaintiffs, who are growers of potatoes in the Twin Falls section, are discriminated against by reason of exemption from the operation of the act of potatoes grown and matured in other sections of the state. (5) That a discrimination exists by exempting sales of potatoes by the grower direct to the consumer in lots of less than car loads, with-

in the state from grading, in violation of the Fourteenth Amendment, and of clause 3, section 8 of article 1 of the Constitution.

While Congress has the exclusive power to regulate interstate commerce, it is well settled that in the absence of congressional action in conflict therewith, a state in the exercise of the police power may adopt legislation designed to promote the public welfare, and to that end may make regulations relative to the disposal of the products of the state, even though such regulations may incidentally or indirectly affect interstate shipments. Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 59 L. Ed. 835; Armour & Co. v. North Dakota, 240 U. S. 510, 36 S. Ct. 440, 60 L. Ed. 771, Ann. Cas. 1916D, 548; Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182; Field v. Barber, 194 U. S. 618, 24 S. Ct. 784, 48 L. Ed. 1142; Reid v. Colorado, 187 U. S. 137, 23 S. Ct. 92, 47 L. Ed. 108; Capital City Dairy Co. v. Ohio, 183 U. S. 238, 22 S. Ct. 120, 46 L. Ed. 171; Plumley v. Massachusetts, 155 U. S. 461, 15 S. Ct. 154, 39 L. Ed. 223; Jackson v. Cravens (D. C.) 235 F. 212; State v. McKay, 137 Tenn. 280, 193 S. W. 99, Ann. Cas. 1917E, 158.

[2] The regulation of the marketing of farm and other products of a state where the same enter largely the local and interstate trade has been recognized as a legitimate exercise of the police power of the state, provided such regulation is not in conflict with an act of Congress or a regulation adopted in pursuance of such an act. Sligh v. Kirkwood, supra; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197. A similar act of the Legislature of the State of Idaho was held by the Supreme Court of that state to be a valid exercise of the police power of the state. Marshall et al. v. Department of Agriculture et al., 44 Idaho, 440, 258 P. 171.

The act was designed to promote the general welfare of the industry which in turn would promote the general welfare of the state. It is alleged in the bill that potatoes comprise the major agricultural crop of the state of Idaho, and that the estimated yield for the year 1930 will approximate 35,000 carloads, of which amount approximately one-third is produced in the region of the state in which plaintiffs' lands are located. It is alleged that the value of the total crop of the state for the year 1930 will approximate $25,000,000 and that the estimated val-

ue of that portion of the total crop produced by plaintiffs is $170,625.

In so far as the legislation affects producers who desire to market their product outside the state, it concerns a field in which Congress as yet has taken no action. Some years prior to the adoption of the act in question the United States Department of Agriculture in the interest of the general development of the agricultural resources of the nation, had, among many similar actions, placed potatoes in several defined classifications. Where the producer so desired he could have his product inspected and classified by agents of that department. There was, of course, no requirement for such classification, as Congress had taken no action in the premises so far as interstate shipments are concerned. The matter is here referred to because it appears that the classifications specified in the Idaho statute, except for one additional grade, follow classifications adopted by the United States Department of Agriculture.

■ The bill of complaint alleges "that by exempting sales by the 'grower direct to the consumer in lots of less than carloads within the State' from all requirements regarding grades and gradings, said act is made to and does apply solely to sales or shipments in interstate commerce." It cannot, we think, be said that because the act permits sales within the state in quantities less than carload lots without grading, that the act applies solely to shipments in interstate commerce. So far as the act is concerned it applies to carload shipments whether intrastate or interstate.

It is alleged in the complaint that to comply with the provisions of said act "to sort and grade potatoes, and weigh potatoes of varying diameter, and in certain proportions as a condition precedent to sale, entails the purchase by potato growers of expensive grading machinery, the employment of extra labor, costs of marking grades upon sacks, and is an arbitrary placing of potatoes in inferior grades, based solely upon diameter of said potatoes, compelling the marking of containers designating a large percentage of potatoes as though of inferior quality, solely by reasons of diameter, resulting in the final designation of a large percentage of potatoes, wholesome for domestic consumption and free from disease or other imperfections, as 'culls' thus branding such potatoes in the minds of the consuming public, in distant states, as unfit for human consumption, and to that extent rendering such potatoes brand-ed as 'culls,' worthless for shipping, thus destroying the property of plaintiffs, and others similarly situated, without due compensation."

■■ It does not follow from the fact that an additional expense is imposed by the statute upon the producer desiring to market his product without the state in order to comply with the provisions of the statute, that a burden is imposed by the state on interstate commerce in any true sense. We are bound to assume that the theory and purpose of the statute is that the requirements for grading were intended to promote the marketability of the product, and that the additional initial expense imposed upon the producer would be reflected in a market price enhanced by reason of a compliance with the provisions of the statute. With respect to the classification of "culls," it cannot, we think, be said that it follows from such a designated classification that the same would brand "in the minds of the consuming public, in distant states" that such potatoes "were unfit for human consumption." The fact that they may be sold at all upon the open market negatives any such idea; besides, there is nothing in the act that does or could control the manner of retailing to the ultimate consumer.

■ It is contended the act is violative of the Fourteenth Amendment to the Constitution "by creating an arbitrary discrimination or classification against the plaintiffs, by reason of exempting from its operation potatoes grown and matured in sections of the State of Idaho other than the section in which plaintiffs reside." The act, however, makes no reference to different sections of the state. The fact that certain portions of the state by reason of soil, climate, or other conditions, are or may be more suitable to the growing of varieties of potatoes that mature earlier than varieties best suited for production in other sections, does not necessarily create an arbitrary classification, and this court cannot say that it does. It may be a matter of such general knowledge that courts should take judicial notice of the fact that varieties of potatoes which mature early in the season usually do not have the lasting qualities of varieties which mature later.

Other minor points have been raised against the constitutionality of the statute, but we think they are sufficiently answered by the views already expressed in this opinion.

Order and decree affirmed.