David B. Vogt, in pro. per.

Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

CANTON POULTRY, INC., Georgia Broilers Corporation, Cotton Producers Association, d/b/a Goldkist Poultry Growers, Inc., and Tip Top Poultry, Inc., Plaintiffs,

v.

Doyle CONNER, Commissioner of Agriculture of the State of Florida, Defendant.

Civ. A. No. 1033.

United States District Court
N. D. Florida,
Tallahassee Division.

Jan. 15, 1968.

Homer S. Durden, Jr., Swainsboro, Ga., for plaintiffs.

Earl Faircloth, Atty. Gen., State of Fla., Wilton R. Miller, Resident Counsel, Fla. Dept. of Agriculture, Tallahassee, Fla., William C. Pierce, Gen. Counsel, State Dept. of Agriculture, Tampa, Fla., Robert A. Chastain, Asst. Atty. Gen., State of Fla., Tallahassee, Fla., for defendant.

### PREAMBLE AND PRELIMINARY FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARSWELL, Chief Judge.

This case was first presented to this Court as one which required a three judge United States District Court for the determination of the issues. A three judge United States District Court was, in fact, designated by the Chief Judge of the United States Court of Appeals, Fifth Circuit, consisting of Honorable Warren L. Jones, Circuit Judge, Honorable William A. McRae, Jr., District Judge, and the writer. Testimony was taken and full hearing on the merits was held at Jacksonville, Florida, all the parties having waived any objection to the matter being held in that city and not in the Northern District of Florida. Findings of fact and conclusions of law were formally prepared by the writer and filed in behalf of the Court, and final judgment entered in behalf of the defendant. An appeal from this order was taken to the Supreme Court of the United States which on June 12, 1967 entered its brief opinion, stating:

"PER CURIAM.

The judgment is vacated and the case remanded to the District Court so that it may enter a fresh decree from which a timely appeal may be taken to the Court of Appeals. Pennsylvania Public Utility Comm. v. Penn-

sylvania R. Co., 382 U.S. 281, 282, [86 S.Ct. 423, 15 L.Ed.2d 324]."

The quoted opinion bears the same style as the instant case and appears in 388 U.S. 458, 87 S.Ct. 2112, 18 L.Ed.2d 1319 (1967)

■ It is clear from reading Pennsylvania Public Utility Comm. v. Pennsylvania R. Co., supra, that the Supreme Court has concluded that the instant case simply was not grounded in "unconstitutionality" of a state measure so as to require a three judge tribunal under 28 U.S.C. § 2281. Nor is Section 2282, requiring such a tribunal in order to enjoin "any Act of Congress for repugnance to the Constitution," invoked by the Florida Commissioner of Agriculture's defense that the federal statute is unconstitutional. It is also clear that this Court, in its one judge capacity, has the mandate of the Supreme Court to enter a fresh decree which will not bar the losing party from taking an appeal, if timely made, from the decree being entered this date to the United States Court of Appeals, Fifth Circuit.

In accordance with this mandate this Court has determined that the findings of fact and conclusions of law entered for and in behalf of the now dissolved three judge tribunal should be adopted in virtually verbatim form, the only changes therein being deletions which, read in the context of a one judge determination would be inappropriate.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, Georgia poultry processors, brought this action against the Florida Commissioner of Agriculture to restrain the enforcement of certain provisions of Chapter 583, Florida Statutes, F.S.A., relating to the inspection, grading and tagging of poultry products within the State of Florida [1] and the rules and regulations promulgated thereunder.[2]

Plaintiffs contend that the subject Florida laws and regulations are unconstitutional as applied to them because: (1) they unduly burden interstate commerce; (2) the federal law has preempted the field of poultry inspection and regulation; and (3) its application to plaintiffs denies them equal protection of the laws in violation of the 14th Amendment.

### FINDINGS OF FACT

The plaintiffs are owners and operators of establishments which process poultry for transportation and sale in interstate commerce, much of it within the State of Florida. Poultry is inspected in these plaintiffs' establishments before interstate shipment by United States Department of Agriculture inspectors pursuant to the Federal Poultry and Poultry Products Inspection Act [3] and the rules and regulations promulgated thereunder.[4] The Florida statutes, together with its rules and regulations, provide for the inspection, grading and tagging of poultry products sold within the State of Florida and authorize the collection of an inspection fee to defray the expenses of administering the statute. The inspection fee is payable to the first person to sell, offer for sale, or hold for the purpose of sale in Florida any dressed poultry on which the inspection fee has not been paid.[5]

The Florida law also provides for the grading of poultry according to standards of quality as established by the Act.[6] The evidence presented on trial shows that a thorough federal inspection of plaintiffs' poultry for wholesomeness is made at plaintiffs' establishments outside Florida. The evidence also shows, however, that there is only very limited federal inspection of poultry shipped into the State of Florida. It was established here that there are only three United States regulatory inspectors

1. Fla.Stat. §§ 583.13, 583.14, 583.17–583.-20 (1961), F.S.A.

2. Florida Administrative Code, Rules of the Department of Agriculture, Chapter 7E–7.02, .05, .06, .09.

3. 21 U.S.C. §§ 451–469 (1957).

4. 7 CFR §§ 70.1–81.207.

5. Fla.Stat. § 583.18(4) (1961), F.S.A.

6. Fla.Stat. § 583.17 (1961), F.S.A.

charged with the responsibility of checking some 9,913 retail stores and some 200 wholesale outlets in Florida. Moreover, one of these three men must perform some duties in six other southeastern states, averaging about ten weeks a year in Florida. Another federal inspector, the record shows, is actually assigned to the southwestern Georgia area and only rarely performs inspection work in Florida. The remaining federal inspector does devote virtually all of his time to his official duties within Florida, but can only cover a small percent of Florida outlets for poultry.

Any poultry in Florida discovered by the federal inspectors to be contaminated must actually be removed from public sale by a stop sale order issued under the provisions of the Florida poultry law.[7] The federal inspector makes application to the State Commissioner's office for this authority.

The extent of inspections made by Florida personnel is in strong contrast to the limited volume of regulatory inspection made by the United States Department of Agriculture. During 1964 there were 42,254 regulatory inspections made at nearly all of the retail and wholesale outlets which distribute poultry in Florida. This regulatory inspection work was carried on by 46 inspectors, all of whom are State of Florida personnel and all of whom have the individual authority to issue stop sale orders on any poultry products they find to be unwholesome. The Florida Department of Agriculture condemned approximately 76,800 pounds of poultry as unfit for human consumption between July 1, 1963 and January 1, 1965. Significantly, approximately one-half of this condemned poultry had been previously inspected by inspectors of the United States Department of Agriculture and shipped from without the State of Florida. The evidence shows that about 90% of Florida processed poultry is for intrastate consumption and, therefore, does not have federal inspection for wholesomeness.

## CONCLUSIONS OF LAW

Plaintiffs first contend that the Florida poultry law is unconstitutional as an undue burden on interstate commerce. The Court disagrees.

It is noted at the outset that the Florida law operates after the product has completed its interstate journey and has lost its character as interstate commerce. The police power of the state is therefore exerted after the product acquires its character as interstate commerce.[8]

The Florida law provides for the inspection, grading and tagging of poultry products sold within the state. A state may adopt measures for the health and safety of its people although interstate commerce may incidentally be involved. See Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915).

About 38,000 pounds of federally inspected poultry shipped into Florida over an eighteen month period was subsequently condemned by the State. In light of this finding, it cannot seriously be contended that the Florida law is not protective of the health and safety of the State.

State legislation, based on police power, which does not discriminate against interstate commerce is not in conflict with the Commerce Clause. See Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852. The state act is applied to locally produced poultry offered for sale in Florida as well as poultry shipped into the state. Any burden which might result from compliance with the state law rests equally upon the local distributors, and is therefore nondiscriminatory.

It is the second contention of plaintiffs that Congress, by passage of the Federal Poultry and Poultry Products Inspection Act has preempted the regulation of poultry so as to exclude poultry regulation by Florida.

The facts are persuasively to the contrary. Moreover, the federal

7. Fla.Stat. § 583.18(2) (1961), F.S.A.

8. Fla.Stat. § 583.16 (1961), F.S.A.

**826**

poultry act is primarily designed to prevent the entry of contaminated poultry into the stream of interstate commerce. This is insured by the extensive federal poultry inspection at the plaintiffs' warehouses before interstate shipment. The Florida law, however, regulates the same product at the other end of the stream of commerce in the same manner in which it regulates similar products which are solely intrastate in character. The Supreme Court held in Florida Lime & Avocado Growers Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, that "Congressional regulation of one end of the stream of commerce does not, *ipso facto*, oust all state regulation at the other end * * *" See also Swift & Co. v. Wickman, 230 F.Supp. 398 (S.D. N.Y.1964), wherein it was held that the federal poultry law did not preempt weight and labeling regulations promulgated under New York's Agricultural Markets Act, McKinney's Consol.Laws, c. 69.

It is also noted here in consideration of all of plaintiffs' arguments the highly perishable character of poultry products, the geography of the area which requires out of state poultry shipments into Florida to move considerable distances, especially to metropolitan areas at the southern extremity of the peninsula, and particularly the fact that federal inspection is patently insufficient to protect the well being of the poultry consuming public within the State of Florida.

■ Finally, the Court cannot say that plaintiffs have been denied the equal protection of the law as assured by the Constitution. The Florida poultry law as applied to these plaintiffs is not arbitrary or unreasonable. See Allied Stores of Ohio Inc., v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480. Upon this record the Court finds plaintiffs' contention that their compliance with both federal and state poultry laws works to their economic disadvantage, although plaintiffs concede that Florida proc-

essors who ship only in intrastate commerce are also subject to the same tax and tagging provisions.

Accordingly, judgment is entered for defendant.