**OIL RESOURCES, INC., a Florida Corporation, Leslie Rattet, Atlantic Oil and Gas Corporation, a Florida Corporation, Michael Dundee, Stephen Tashman, and Archie Tashman, Plaintiffs,**

v.

**STATE OF FLORIDA, DEPARTMENT OF BANKING AND FINANCE, DIVISION OF SECURITIES, Gerald Lewis as Comptroller of the State of Florida, and head of the Department of Banking and Finance, Defendants.**

No. 84–785–CIV–EPS.

United States District Court,
S.D. Florida,
Miami Division.

April 6, 1984.

John A. Hutchings, H. Alan Dill, Dill, Dill & McAllister, Denver, Colo., Carl Schmitt, North Bay Village, Fla., for plaintiffs.

R. Michael Underwood, Asst. Gen. Counsel, Tallahassee, Fla., C.M. Snurkowski, Asst. Atty. Gen., State of Florida, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL FOR LACK OF JURISDICTION

SPELLMAN, District Judge.

THIS CAUSE comes before the Court on the Plaintiffs' Verified Complaint and Motion for Temporary Restraining Order. The Court having reviewed the pleadings and heard oral argument in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that this cause be DISMISSED for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

Given a temporary setback by the State of Florida, the above-named Plaintiffs have chosen to forego their state appellate remedies in exchange for bringing this federal action. Plaintiffs comprise two businesses incorporated under the laws of the State of Florida, and four individual Florida citizens who are the sole shareholders of said corporations. Plaintiffs engage in the purchase and sale of oil and gas leases acquired from either private companies, private individuals, or the United States Department of the Interior. These leases are divided into parcels ranging in size from 40 to 640 acres and are offered to the public through various advertising schemes. Plaintiffs allege that they divest themselves completely of all legal interests in the leases and make no commitments to purchasers after sales are consummated.

On March 15, 1984, the State of Florida, Department of Banking and Finance, Division of Securities, and Gerald Lewis as Comptroller of the State of Florida and head of the Department of Banking and Finance, issued an Immediate Final Order to Cease and Desist. The Immediate Final Order to Cease and Desist (hereinafter the "Order"), was issued pursuant to §§ 517.-221(1) [1] and 120.59(3) [2], Fla.Stat.

---

**1.** Section 517.221(1), F.S.A. provides as follows: The Department may issue and serve upon a person a Cease and Desist Order whenever the Department has a reason to believe that such person is violating, has violated, or is about to violate any provision of this Chapter, any

**2.** See note 2 on page 1029.

On March 29, 1984, the Plaintiffs filed a Verified Motion before this Court for Temporary Restraining Order requesting that the State of Florida, Department of Banking and Finance, Division of Securities, and Gerald Lewis be restrained from enforcing the Order as to them. The Plaintiffs have also filed a Verified Complaint for Injunctive Relief, Declaratory Judgment and Damages.

## JURISDICTIONAL ISSUES

The Plaintiffs claim federal jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure. In essence, these statutes provide for federal jurisdiction when a Complaint on its face presents a federal question, that is, one "arising under" the Constitution, laws, or treaties of the United States. Plaintiffs allege the existence of two federal questions in this instance: they challenge the state's Order as violating both the Commerce Clause (Article I, § 8, Clause 3) and the Due Process Clause (Paragraph One of the Fourteenth Amendment) of the Constitution. In order for jurisdiction to attach, the Court must first determine whether the Complaint presents a genuine issue under these two constitutional provisions.

### A.  Commerce Clause

The Commerce Clause provides that "[t]he Congress shall have the power ... to regulate commerce ... among the several states." Plaintiffs allege that the administrative Order unconstitutionally prohibits them from doing business with persons outside of the state of Florida from offices within this state. The language of the Order finds its origin in § 517.12, F.S.A. (1981):

> No dealer, associated person, or issuer of securities shall sell or offer for sale any

securities *in or from* offices in this state, or sell securities in this state to persons thereof from offices outside this state, by mail or otherwise, unless the person has been registered with the department pursuant to the provisions of this section. (Emphasis added).

The question thus becomes whether, by precluding the Plaintiffs from doing business "in or from" offices in Florida the Statute violates the Commerce Clause by unduly restraining interstate commerce.

■ It has long been recognized that, [I]n the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 669–70 [101 S.Ct. 1309, 1315–16, 67 L.Ed.2d 580] (1981) [quoting *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945) ].

■ Recent cases cited by the Plaintiffs indicate a four-part test to determine validity under the Commerce Clause. A state statute is valid if it (1) effectuates a legitimate local interest; (2) regulates even-handedly as between interstate and intrastate commerce; (3) allows for only incidental, not direct, regulation of interstate commerce; and (4) does not impose a burden on interstate commerce which is clearly excessive in relation to the putative local benefits. *See Edgar v. Mite*, 457 U.S. 624, 640, 102 S.Ct. 2629, 2640, 73 L.Ed.2d 269 (1982) [citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960) ]. *Edgar v. Mite, supra*, would clearly be authority to establish jurisdiction on the instant case, except

Rule or Order promulgated by the Department, or any written agreement entered into with the Department.

**2.** Section 120.59(3), F.S.A., provides as follows: If an Agency head finds that an immediate danger to the public health, safety, or welfare

requires an immediate Final Order, it shall recite with peculiarity the facts underlying such finding in the Final Order, which shall be appealable or enjoinable from the date rendered.

for two differences. First, the Illinois Act in that case infringed on existing federal legislation. Second, in the case at bar all the Plaintiffs are Florida citizens, all the corporate shareholders are Florida residents, the businesses are incorporated under Florida laws and the principal place of business is in Florida. The single fact in support of Plaintiffs' interstate commerce claim is that their solicitations are aimed at prospective purchasers living outside of Florida.

States have traditionally regulated intrastate securities transactions in furtherance of their police powers, and such regulation has been upheld as affecting interstate commerce only incidentally. *See Hall v. Geiger-Jones Co.*, 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1917). The language of the Ohio registration statute was different ("no dealer shall, *within this state*, dispose ..."). 242 U.S. at 557, 37 S.Ct. at 223 (original emphasis). However, both statutes reach similar results. The Ohio statute excluded a foreign dealer who refused to register his securities; the Florida Act attempts to shut down a local dealer who refuses to register. It is certain that if the Plaintiffs attempted to sell securities to persons outside Florida from offices within Florida that they would be liable under Florida law. *State v. Hayes*, 305 So.2d 819, 821 (Fla. 1st DCA 1975). But it is equally certain that they would also still be "doing business" within the State of Florida even if they sold only to non-residents, because of the substantial contacts the Plaintiffs have with Florida.[3] Florida's law is sufficiently similar to Ohio's in application to withstand scrutiny under *Hall v. Geiger-Jones Co.*, *supra*. In addition, the Florida statute is also valid under the four-part test enunciated in *Edgar v. Mite*, 457 U.S. at 640, 102 S.Ct. at 2640, as follows:

(1) Counsel for the Defendants names two purposes behind the Statute: to protect the people of Florida from fraud and deceitful practices, and to protect the national reputation of Florida security dealers. The Court finds that these are legitimate local interests supported by case law. *See Stottler Stagg & Associates, Inc. v. Argo*, 403 So.2d 617, 618 (Fla. 5th DCA 1981); *O'Neill v. State*, 336 So.2d 699, 700 (Fla. 4th DCA 1976).

Although Florida's interest in protecting consumers might be limited to citizens of this State, its averred intention in upholding its general commercial reputation is a legitimate exercise of its police power and is sanctioned by the Constitution. *See Sligh v. Kirkwood*, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915); *cf. Upton v. Trinidad Petroleum Corp.*, 468 F.Supp. 330 (N.D.Ala.1979) (similar purpose of Alabama Blue Sky statute upheld).

(2) Under the second part of the *Edgar* test, the state rule must regulate evenhandedly as between intrastate and interstate commerce. The right of a state to incorporate a business must certainly include the right to regulate the conduct of said business, absent a showing of discriminatory intent either against the individual business or against interstate commerce. Although Florida's regulation prevents the Plaintiffs from "doing business", it applies even-handedly to interstate and intrastate commerce. The Plaintiffs do not allege any other form of discrimination. Therefore, the second part of the *Edgar* test is satisfied.

(3) It is important to note that the effect on interstate commerce here is only *incidental*. The direct purpose of the Florida statute is to regulate ongoing business activities within this State. Because of modern transportation and communication facilities, even a local business will have substantial interstate sales; a cease and desist order by the State will naturally have an impact on interstate commerce. Yet, at least in the situation before the Court, the impact is only incidental. *See Hall v. Geiger-Jones Co.*, 242 U.S. 539, 558, 37 S.Ct. 217, 223, 61 L.Ed. 480 (1917).

---

**3.** The Plaintiffs are all either individuals residing in Florida or Florida corporations whose principal place of business is in Florida and whose shareholders are all Florida residents. They would be vulnerable to suit in Florida courts and, under the prevailing choice-of-law theories, Florida law would likely be applied regardless in which jurisdiction a suit was initiated.

(4) Plaintiffs have not alleged that the registration requirement of the Florida statute imposes an unreasonable burden on them. Likewise, it does not unduly restrict interstate commerce relative to the local benefits. *See Hutchinson Ice Cream Co. v. Iowa,* 242 U.S. 153, 157, 37 S.Ct. 28, 29, 61 L.Ed. 222 (1916) (regulation itself is not unreasonable); *cf. Underhill Associates, Inc. v. Bradshaw,* 674 F.2d 293 (4th Cir. 1982) (Virginia Blue Sky statute valid).

Because the Florida statute fulfills a legitimate state interest, does not discriminate against and only incidentally affects interstate commerce, the Court finds that there is no genuine federal question arising from the Commerce Clause.

### B. Due Process Clause

■ The Plaintiffs' claims under the Due Process Clause would present grounds for federal jurisdiction, but for the fact that the relevant Florida statute provides a prompt hearing. Section 517.221(2) F.S.A. (1978) (allows a hearing pursuant to § 120.-57 F.S.A.). Because there is some question whether the administrative Order in question provided Plaintiffs with adequate notice *under Florida law,* the Court finds no

adequate grounds for a federal due process claim at this time.

There being no genuine federal questions presented, the Court finds no basis for federal jurisdiction, and this action must be dismissed.[4] The Plaintiffs are directed to pursue their remaining state appellate remedies.

---

**4.** Had the Plaintiffs presented a genuine federal question, the Court is of the opinion that the *Pullman* doctrine would require abstention. Substantial issues of Florida law are admitted by both parties to be at issue here, not only with respect to the due process issue under the Florida Constitution, but also regarding (1) whether the Plaintiffs are in fact marketing "securities" as that term is defined by Florida law, and (2) the extent to which the Order precludes the Plaintiffs from soliciting outside the State of Florida. The resolution of these questions would considerably narrow the scope of the federal constitutional issues. *See High Ol' Times, Inc. v. Busbee,* 621 F.2d 135 (5th Cir. 1980).

In addition, the Plaintiffs readily admit that they had not exhausted the applicable state appellate procedures, but opted for a federal suit with the ostensible purpose of obtaining a speedier disposition of the controversy. The Court recognizes that failure to exhaust state administrative remedies does not in itself preclude a § 1983 action. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Although to be narrowly construed,

the abstention doctrine is designed to protect important federalism interests, and a federal court should use great hesitation when it considers interfering with an ongoing state procedure. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 606, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1974). The Plaintiffs clearly interrupted an ongoing state administrative process in order to fashion their potential federal defenses in state court into federal claims in the present action. *Cf. Home Federal Savings and Loan Association v. Insurance Department of Iowa,* 571 F.2d 423 (8th Cir.1978) (federal defense not a ground for federal jurisdiction).

As to the merits of the Motion for Temporary Restraining Order, the Court's Memorandum Opinion today would serve as the basis for denying such relief on grounds that the likelihood of Plaintiffs' success on the merits of their federal claims is insufficient to satisfy the Eleventh Circuit's TRO prerequisites. *See Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974). A preliminary injunction is an extraordinary and drastic measure which should not be granted unless movant carries the burden of persuasion. *Id.* at 573.