EX PARTE OSCAR S. LEWIS, *Petitioner.*

Division B.

Opinion filed May 26, 1931.

Carter, Solomon and Pierce, of Marianna, and H. V. Mc-Clellan, of Blountstown, for Petitioner;

Cary D. Landis, Attorney General, for the State.

DAVIS, J.—The warrant under which petitioner was arrested charges that petitioner, O. S. Lewis, then and there being, did then and there unlawfully take fish or attempt to take fish in the fresh waters of Calhoun County, Florida, to-wit: in a portion of the Dead Lakes in said County, it then and there being closed season on taking or attempting to take fish in said fresh waters.

Section 71A, of Chapter 13644, Laws of Florida, Acts of 1929, provides as follows:

"The Board of County Commissioners of any county in this State shall have authority to provide by resolution, for a closed season on the taking of fresh-water fish from the fresh waters of this State, which closed season shall not exceed sixty consecutive days in length from the time of the beginning of same, and which closed season shall be observed, when so prescribed, in lieu of any closed season upon fish prescribed in this Act. Resolutions fixing a closed season on the taking of fresh-water fish, when passed under this Act, shall be published in a newspaper published in the county for not less than four consecutive issues after the adoption of the resolution and prior to the time fixed for the taking effect of the closed season prescribed, and a certified copy thereof shall be filed with the State Fresh-

Water Fish and Game Commissioner on or before the effective date of the same. Resolutions passed under authority of this section revising the closed season on the taking of fish shall be limited to the particular season specified in such resolution, and no resolutions shall be passed at any one time covering more than one season. The County Commissioners shall provide for the printing and posting of copies of any resolution passed under this section at such public places as they may deem advisable to give notice to the public that the closed season has been fixed for fresh-water fish under this section. It shall be unlawful for any person to take any fresh-water fish during the period of any closed season fixed under authority of this section. In the case of waters forming a part of a county line of any adjoining county, no closed season on fishing shall be prescribed in such waters, except by the concurrence of the Board of County Commissioners of each county of which said waters form a part of the boundary, and like proceeding shall be followed in waters lying in two or more counties."

The petition alleges, and the accompanying exhibits show, that the fresh waters referred to in the warrant of arrest lie in two or more counties, namely, the adjoining counties of Gulf and Calhoun.

It was therefore necessary in order to prescribe a closed season in these waters, that there should have been a concurrence of the Boards of County Commissioners of each of the above named counties in a resolution adopted by them for that purpose. The brief for the State admits that there was no such concurrence, and for this reason the prisoner is entitled to his discharge, because the conditions necessary to give effect to the statutory provision for closing the waters is shown not to have existed at the time petitioner was arrested, and therefore the statute could not have been violated.

But the principal ground urged by the petitioner for his discharge is that the statute under which he was arrested is unconstitutional as an unauthorized delegation of legislative power to the Boards of County Commissioners of the several counties to enact a closed season for fishing such counties.

We are not unmindful of the general rule that where a case can be disposed of on objections other than constitutional grounds that the court will not pass upon or discuss the validity of a statute which is under attack. Rorick v. Stillwell, decided at the present term, and cases cited.

But it is also true that this court, as well as the Supreme Court of the United States, has at times given its opinion concerning matters of great importance involving important principles of constitutional law affecting the powers and duties of public officials, even though a decision on the constitutional points in the particular case was unnecessary to dispose of it.

For an example of this practice see the holding of this court in the case of State ex rel. R. R. Commrs. v. So. Tel. & Const. Co., 65 Fla. 67, 61 So. 119, where this Court emphasized the fact that the case then before it embraced grave questions affecting the authority and duties of the Railroad Commissioners, which the public had an interest in having determined on the legal points raised, and accordingly refused to dismiss the writ of error, altho any decision on the constitutional points raised in that case was wholly unnecessary to the rendition of judgment by the appellate court to dispose of it.

Likewise the case of Florida v. Mellon; 240 U. S. 342, 60 L. Ed. 679, is an example of a similar practice followed by the Supreme Court of the United States. There the Federal Supreme Court, after holding that the State of

Florida had no standing in that court to maintain a case to challenge the constitutionality of a Federal Inheritance tax deduction statute as applied to Florida, nevertheless, proceeded to deliver a lengthy opinion on the merits and to hold the Federal Statute to be entirely constitutional as against the objections urged by the State which the Court said had no right to make them because of a lack of interest to be affected adversely by the Federal Law. Such opinion has been adhered to in at least one subsequent case.

So in this case we feel warranted, though we discharge the prisoner on other grounds, in passing upon the serious constitutional question argued because of its importance to the protection of one of the great natural resources of the State—its fish, as well as to form a precedent for the future guidance of officials and citizens in their conduct with reference to the power given by the Statute. The case on the constitutional point has been fully and exhaustively briefed for the petitioner, and a decision on the subject by this Court under the circumstances is by no means *ex parte* insofar as petitioner and others similarly situated may be concerned.

Furthermore, the reason for the rule that Courts will not pass upon the constitutionality of statutes when cases can be decided on other points, is that the courts must always preserve the attitude of respect and deference which is due by the judicial department to the legislative, in the light of which the courts invariably treat all statutes as being constitutional and within the legislative power until the contrary appears beyond any reasonable doubt, making it unavoidable for the courts to declare otherwise, in order to prevent an unconstitutional statute from over-riding the constitution.

And in the case at bar if our conclusions on the constitutionality of the statute were adverse to its validity, we would, for the reasons just referred to, hesitate to so declare in view of the fact that this case might be disposed of on other grounds which would render such declaration unnecessary.

For many years the statutes of the State, general and special, have exhibited a continued state policy of protecting and preserving the state's fish and game. This has largely been accomplished by means of laws prescribing closed seasons on taking either.

Prior to the enactment of Chapter 13644, *supra*, commonly known as the 1929 general game law, this policy was evidenced by a multitude of divergent and many times conflicting "local" statutes which prescribed variant seasons during which it was made unlawful to hunt game or take fish in particular localities. So great was the number of these local statutes and so often were they enacted, amended, revised, repealed and re-enacted that the utmost confusion inevitably resulted in their administration. In many instances it was remarked that the county officials and even the game wardens themselves were unable to give accurate advice to citizens as to just what, if any, closed seasons, prevailed in a particular water in a particular locality, in some counties.

The Courts are warranted in taking judicial notice of the reasons which lead to and support the enactment of a statute. The courts indulge the presumption that if any state of facts can be conceived of which would sustain the reasonableness and validity of an act of the legislature, that such state of facts exists and justifies the enactment. Rast v. Van Deman & Lewis Co., 273, U.S. 12, 71 L. Ed. 511.

In this case the Court judicially notices the fact that the purpose of a closed season on fishing in the fresh waters of the state is for conservation of the fish by affording the fish an opportunity during the closed season to replenish themselves without molestation from sportsmen. The season during which this restriction is required to be placed for purpose of conservation varies in different waters and in different localities and in some waters and in some localities the necessity for a closed season does not exist at all, as every one commonly knows.

So construing section 71A of Chapter 13644, *supra,* as having been enacted for the conservation of fresh water fish, and as having for its purpose and object the setting apart in each year of a period of not exceeding sixty consecutive days during which fishing shall be prohibited for the better protection of the fish, we have a statute which measures up to the rule laid down by this Court in the case of Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, where it was held:

> "The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying the law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. The principle of the law is peculiarly applicable to regulations under the police power, since the complex and ever changing conditions that attend and affect such matters make it impracticable for the legislature to prescribe all necessary rules and regulations." Sec. 56 Fla. 617.

Complex and variant conditions that affect the taking of fish in our fresh waters are known to have made it

impracticable for the Legislature itself to intelligently and fairly deal with the subject of closed fishing seasons directly in each locality by naming the particular time of the closed season in the statute. Experience with a myriad of such previous legislative attempts has undeniably so demonstrated.

But the power to *enact* a law closing fresh waters in the county for a certain season is not delegated to the county commissioners because the declaration of the policy of a closed season is found in the terms of the statute itself. Nor is there any unrestricted discretion delegated to them to apply the law, because that discretion which if delegated at all, is delegated to be exercised only in a restricted way and for a restricted time. This restricted way is by resolution adopted in a particular manner, promulgated in a particular manner, limited to a period of not exceeding sixty days and not subject to repeal when once adopted and put into effect.

The penalty imposed for a violation is a penalty for violating the *statute* which provides that there shall be no fishing allowed during a closed season. The resolution which is authorized merely identifies the closed season and gives the particular dates on which it shall begin and end in view of the circumstances which the County Commissioners may know to exist in a particular county.

And, if the conditions in a paticular county are such that no closed season at all is required in that county for purposes of conservation during the year, the County Commissioners, having knowledge of this fact, may give effect to it by not passing any resolution at all for that year, thereby leaving the season open for such period and only so long as the facts warrant that course of action

in the particular locality, without prejudice to the policy of conservation, which is the key note of the particular law in which Section 71A is found.

The rule on this subject is well stated in a recent case decided by the Supreme Court of the United States upholding the congressional delegation of power to the President of the United States to modify or change tariff schedules already fixed in a Congressional Act.

In that case (Hampton v. United States, 276 U. S. 400, 72 L. Ed. 624) Mr. Chief Justice Taft, quoting from another case, said:

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of law. The first cannot be done; to the latter no valid objection can be made."

To which quotation may be added another from the same opinion:

"Congress may feel itself unable conveniently to determine exactly when its exercise of the legislative power should become effective, because dependent on future conditions, and it may leave the determination of such time to the decision of an executive."

The legislative power which is to declare a closed season of not exceeding sixty days in any one year has been completely exercised in the statute. Only the exact dates for its becoming effective, whether once every year or once every several years in a particular county, is left to the determination of the several Boards of County Commissioners.

So the statute is not unconstitutional as an unlawful delegation of legislative power, nor would the Court be

warranted in so holding where it is established that the statute has been properly invoked in accordance with its operative conditions.

For the reasons first pointed out, however, the prisoner must be discharged, and it is so ordered.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.