## POLK CO. et al. v. GLOVER, County Solicitor, et al.

District Court, S. D. Florida, Tampa Division.

Feb. 1, 1938.

Sutton, Reeves & Hobbs, of Tampa, Fla., for plaintiffs.

Zewadski & Pierce, of Tampa, Fla., and E. G. Grimes, of Bradenton, Fla., for defendants.

Before FOSTER, Circuit Judge, and AKERMAN and LONG, District Judges.

LONG, District Judge.

■ This case is before the court upon the bill of complaint, motions to dismiss, and answers. The attack is made on chapter 17783, Laws of Florida, Acts 1937: "An Act Relating to and Regulating the Marking and Labelling of Containers of Canned Citrus Fruit and/or Citrus Juice; Requiring That the Label on Such Containers Show in What State or Country the Citrus Fruit or Citrus Juice in Such Containers Was Produced or Grown and Requiring That Any Container of Canned Citrus Fruit or Citrus Juice Produced or Grown in the State of Florida Shall Have the Word 'Florida' Stamped Into or Embossed Upon the Tin, Glass or Other Substance of Which Such Container is Made and Prohibiting the Use of Any Container Bearing the Word 'Florida' for Canned Citrus Fruit or Citrus Juice Produced or Grown Outside of the State of Florida and Providing Penalties for Violation hereof."

This act can have but one purpose, and that is to protect one of the largest if not the largest industry in the state of Florida, what is known as the citrus industry. As shown by the preamble in the act, which preamble sets forth that certain persons, firms, and corporations in the state have, prior to the enactment of the act, been engaged in importing into the state citrus fruit and citrus juices produced and canned in other states, labeling the same in the state of Florida and selling the same from the state of Florida, thereby leading the dealers in such commodity to believe that such citrus fruit and citrus juice was produced in the state of Florida, to the injury and detriment of the producer and canner of citrus fruits and citrus juice in the state of Florida. From this preamble it must be assumed that the Legislature, before the passage of the act, made some investigation of this condition. At least it is apparent from the wording of the preamble that the lawmaking power of the state knew of the existence of this condition and was taking the necessary steps to prevent deception and unfair competition to protect the grower and his products. Prior to the enactment of this act the Legislature in 1935, Acts 1935, c. 16854, recognized the importance of this industry, and to promote its progress created the Florida Citrus Commission, which since its creation has expended thousands of dollars, raised by virtue of a tax levied in pursuance of certain advertising laws through this Commission, advertising and promoting the sale of citrus fruit, the result of which has been the creation of a great demand and a better market for this Florida commodity. The Legislature of 1937 realized this fact, and in order to protect this great industry from those inclined to bring into Florida from other states citrus fruit, labeling same as a Florida product, placing it on the various markets of the country as Florida fruit, saw fit after an investigation to pass the law. The Legislature is the judge of the necessity of such an enactment, and the presumption is that their action was taken advisedly.

■ The first question of law raised by the bill of complaint is that the title of the act is insufficient because the power given the Florida Citrus Commission was not mentioned in the title which is in violation of section 16 of article 3 of the Constitution of Florida. "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title."

This question has been presented to the Supreme Court of this state many times. The act deals with the marking and labeling of containers of canned citrus fruit and citrus juices, and all matters pertaining to that subject can be included unless the title is misleading or deceptive, or so vague as to be both. There are no two unconnected subjects embraced in this act, but it deals with one subject and matters properly connected therewith. State v. Bryan, 50 Fla. 293, 39 So. 929; Schiller v. State, 49 Fla. 25, 38 So. 706; Whitney v. Hillsborough County, Fla., 99 Fla. 628, 127 So. 486; Pullman Co. v. Knott, 70 Fla. 9, 69 So. 703, 705.

■ It is hardly necessary to discuss section 1 of the act, for the reason that the bill of complaint does not allege that there is any attempt or threatened enforcement or prosecution under the labeling provision of this section of the act against these plaintiffs; therefore, the plaintiffs are not in a position to complain of the invalidity of this section. Plaintiffs do con-

tend, however, of an unlawful delegation of legislative authority with reference to the power given the Commission. In considering this question it will be borne in mind that the bill does not in any manner question the reasonableness of the regulation as made, but directs its attack upon the authority to make it. The rule laid down in the case of Pacific States Box & Basket Company v. White, 296 U.S. 176, 56 S.Ct. 159, 161, 80 L.Ed. 138, 101 A.L.R. 853, is that the United States Supreme Court is not concerned with the wisdom of legislative regulations of states, but can only enquire whether a regulation is arbitrary or capricious. The Supreme Court of Florida, in passing upon the question of delegation of authority, has adopted the principle of law that: "The Legislature, in enacting a law complete in itself, designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission within fixed and valid limits to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose." State ex rel. Davis v. Fowler et al., 94 Fla. 752, 114 So. 435, 437; Ex parte Lewis, 101 Fla. 624, 135 So. 147; United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563.

Section 2 of the act, which is the section to which the attack is chiefly directed, follows: "Every container used for canning citrus fruit or citrus juice produced or grown in the State of Florida shall have stamped into or embossed upon the tin, glass or other substance of which such container is made, the word 'Florida,' and it shall be unlawful for any person, firm or corporation to use for canning citrus fruit or citrus juice produced or grown in the State of Florida any container which does not have stamped into or embossed upon the tin, glass or other substance of which said container is made, the word 'Florida.' It shall be unlawful for any person, firm or corporation to use any container bearing the said word 'Florida' for any canned citrus fruit or citrus juice produced or grown outside of the State of Florida."

■ The next question of law raised by the bill is that the act constitutes unlawful interference with interstate commerce. The regulation made by the Commission is placed on the manufacturer or grower of citrus fruits in Florida under the police power, and its purpose is to prevent unfair competition and to protect the buyer from deception. In Pacific States Box & Basket Company v. White, supra, "Such regulation of trade is a part of the inspection laws; was among the earliest exertions of the police power in America; has been persistent; and has been widely applied to merchandise commonly sold in containers."

The fact is, as appears from the bill, that the regulation requiring the embossing of the word "Florida" is a regulation affecting the product while in the process of manufacture and within the jurisdiction of the state and some time before the commodity actually commences its journey from one state to another; that the point of time at which a commodity enters into interstate commerce and ceases to be subject to the state wherein it is produced is when the commodity actually commences its journey from one state to another, and until such time arrives the state in which the commodity is located has jurisdiction over it. This rule seems to have been followed in the case of Chassaniol v. City of Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004. See, also, Pacific States Box & Basket Company v. White, supra; L. Maxcy, Inc., v. Mayo, 103 Fla. 552, 139 So. 121. Production of article intended for interstate commerce is matter of local regulation, and interstate commerce therein does not begin until actual delivery to common carrier for transportation or actual commencement of its transfer to another state. Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas.1918E, 724; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615.

■ The next legal question presented is that the law deprives the complainants of their property without due process of law. There is no sufficient showing either by affidavit or by the allegations of the bill to uphold the contention that the act deprives the plaintiffs of their property without due process of law. The allegations do not justify the contention that the section attacked is purely arbitrary or unjust in its operation. All canners are effected in a like manner, and it falls with substantial fairness upon all persons engaged in the canning business. As shown by the affidavits, it is true that all of the canners are not engaged in the practice of selling citrus fruits and its juices canned in states other than Florida and labeling the same in Florida, but, as shown by the affidavits, a part of them are, and it is to this form of deception and unfair competition

that this section of the law is directed. Its purpose is to prohibit fraud and deception, and it is, therefore, clearly within the police power of the state of Florida. Because of the fact that certain parties are engaged in a practice prohibited by law cannot make the law arbitrary, and, therefore, does not deprive one of his property without due process of law. As said before, this court is not interested in the wisdom of the Legislature, but only in whether its act is arbitrary and capricious. We are of the opinion that the decision of the Supreme Court of the United States in Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L. Ed. 835, is sufficient authority for denying the interlocutory injunction and dismissing the bill. It is true that this case dealt with the shipment of immature oranges that were considered deleterious to health, but on page 61 of 237 U.S., page 503 of 35 S. Ct. of the text, the Supreme Court said: "We may take judicial notice of the fact that the raising of citrus fruits is one of the great industries of the state of Florida. It was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other states wherein such fruits find their most extensive market."

The same reasoning would seem to apply to the requirement that canned fruits and juices be stamped "Florida" to indicate their origin.

 The next and last question of law raised is that the act causes financial damage and injury to the complainants. The jurisdiction of a federal court of equity attaches only when the rights of property are involved and the damages are irreparable. The bill alleges that the act does not make provision for the use of tin containers already purchased and on hand and which do not contain the specified embossing, and that the plaintiffs have on hand such unembossed containers in the value in excess of $33,000, and that such containers will no longer be usable if the said statute is enforced. This is not a sufficient showing of any irreparable injury to these plaintiffs. There is no contention that the containers could not be used for the packing of vegetables or commodities other than citrus products. As to the other allegations of injury and financial damage, pecuniary injury alone is not sufficient to overthrow state or municipal law.

 In passing upon the sufficiency of a bill seeking a temporary injunction, the court will consider whether or not the injury to the public outweighs the injury to the plaintiffs, which would result from the refusal to grant the relief. It appears from the affidavits on file in this case that during the season of 1936–37 large quantities of canned juice packed in other areas were shipped into Florida, labeled in Florida with labels indicating that it was packed in Florida, and shipped to buyers in the North who presumed they were purchasing a Florida product, and who in turn distributed to the retailer, thus deceiving the consumer in thinking that he was getting a Florida product, when in truth and in fact he was not. And, further, that if the practice is allowed to continue and increase it will greatly reduce the price which the Florida grower will receive for his fruit and ultimately force him out of business. This proof is not denied, but on the contrary it appears to be admitted that in certain instances this deception has occurred.

It is the opinion of the court that the application for interlocutory injunction should be denied and the bill dismissed.

It will be so ordered.