13 So.2d 161

**STATE ex rel. BLAND et al. v. ST. JOHN.**

**6 Div. 122.**

Supreme Court of Alabama.

March 26, 1943.

Rehearing Denied May 13, 1943.

Horace C. Wilkinson, of Birmingham, and T. B. Ward, of Tuscaloosa, for appellants.

272

Norman W. Harris, of Decatur, and Finis E. St. John, Jr., of Cullman, for appellee.

THOMAS, Justice.

This is a quo warranto proceeding under Code 1940, Chapter 33, Title 7, Sections 1133–1146, to oust the temporary acting solicitor of Cullman County, appointed by Governor Dixon on December 22, 1942. Petitioner seeks to establish his right to this office. He was appointed by Governor Sparks on January 25, 1943, to fill the vacancy which occurred when Mr. Joe V. Knight, the duly elected and qualified solicitor (after taking the oath of office), certified in writing to Governor Sparks that he desired to avail himself of the provisions of the Act of November 20, 1942, and requested the Governor to appoint some person as temporary acting solicitor during his absence in the military service of the United States of America.

The question for decision is which of the two Governors had the right of appointment under the law and the Act of the Legislature approved on November 20, 1942. The information originally filed and as amended was sufficient in law to present for decision the important questions necessary for determination of the title to the instant office when raised by demurrer. Baker v. State, 222 Ala. 467, 133 So. 291; Byrum v. Pharo, 240 Ala. 564, 200 So. 622.

To a full understanding of the averred facts, counsel has correctly stated the same as follows:

"On May 6, 1942, Knight was inducted into the military service. May 11, 1942, Knight was nominated County Solicitor of Cullman County, Alabama.

"Nov. 3, 1942, Knight was elected County Solicitor of Cullman County, Alabama, and his election duly declared as provided by law," for the term of four years beginning on the first Monday after the second Tuesday in January, 1943.

December 21, 1942, a member of the Draft Board certified in writing to Governor Dixon that Knight was inducted into the military service May 6, 1942, and was still in the service.

December 22, 1942, Governor Dixon appointed Mr. St. John temporary acting county solicitor of Cullman County, Alabama. This appointment was to take effect on the first Monday after the second Tuesday in January, 1943, "the tenure of your holding this position shall be that set out in Section 5 of Act No. 2, Special Session of the Legislature of Alabama, 1942, approved by me as Governor on November 20, 1942."

December 28, 1942, Governor Dixon issued Mr. St. John a commission as temporary acting county solicitor for Cullman County, Alabama. "To have and to hold the said office, together with all the Rights, Powers and Emoluments to the same belonging or in anywise lawfully appertaining, during the term described by the Constitution and Laws of the State of Alabama, if you shall so long demean yourself well."

January 18, 1943, Knight took the oath of office required by law of such official and the dueling oath and qualified as county solicitor of Cullman County, Alabama. On the same date he sent to Governor Sparks a communication stating that he desired to avail himself of the special Act of 1942, approved November 20, 1942, and asked the Governor to appoint some person as temporary acting officer during his absence in the military service and further that "this notice is intended as a compliance with said Acts of 1942, Special Session."

January 25, 1943, Governor Sparks appointed Earney Bland temporary acting county solicitor of Cullman County, Alabama, reciting that Knight had been duly elected and qualified and had advised him in writing of his entry into the military service, and of his desire to avail himself of the privileges and immunities provided for by the said special act.

January 25, 1943, Governor Sparks issued a commission to Earney Bland as temporary acting county solicitor of Cullman County, Alabama.

The office of the county solicitor for Cullman County, Alabama, is provided for by Local Act 1935, p. 196, which reads as follows: "The County Solicitor * * * shall hold office for a term of four years beginning on the first Monday after the second Tuesday in January, 1939, and until his successor is elected and qualified." Section 1.

We take judicial knowledge of the fact that in compliance with said act an election was held in November, 1938, and Mr. Kinney was elected to such office. Mr. H. H. Kinney resigned and Mr. F. E. St. John, Sr., was appointed for the unexpired term and was commissioned December 2, 1940, for the term expiring on January 18, 1943. It is apparent that Mr. St. John's term of office had not expired when Governor Dixon attempted to appoint him as temporary acting solicitor in place of Mr. Joe V. Knight, who was elected in November, 1942, for a four year term. It follows that there was no vacancy in the office when such attempted appointment was made. No vacancy could occur until there was a failure of qualification of the duly elected official, Mr. Knight, within the time required by law. Therefore, the case of Oberhaus v. State ex rel. McNamara, 173 Ala. 483, 55 So. 898, is without application, since the term in that case expired before the appointment and beginning of the new term.

Under the impending world crisis and the participation of the United States in this war of nations, the Legislature of Alabama apprehended that state, county and municipal officials would be called into "the military service of the United States," and that such service may or would interfere with the orderly conduct of the business of the state, counties or municipalities, and passed three acts of like tenor, with full appreciation of the effect of the Constitution of Alabama of 1901, § 280, which provide for the appointment, authority and compensation of *temporary acting officials* during the absence of the official in the respective offices indicated in the several acts. Gen.Acts, Spec.Sess.1942, Act. No. 1 (State officials and employes), Act No. 2 (County officials), Act No. 8 (Municipal officials).

The Act relating to county officials appears in the statement of the reporter. It will be observed that Sections 1 and 3 of the said act are as follows:

"Section 1. *The office of any official of any county* of the State of Alabama, who has heretofore entered, or who shall hereafter enter the military service of the United States at a time when there is an existing state of war between the United States of America and any other country, *shall not be deemed vacated by reason of such service, nor shall such military service be deemed acceptance of, or the holding of, an office of profit under the United States within the purview of Section 280 of. the Alabama Constitution of 1901."*

"Section 3. *That officer or board who now has the power to appoint to vacancies in such office upon being advised in writing by an elected or appointed official of any county in the State of Alabama that such official has or will, enter the military service of the United States, and desires to avail himself of the privileges and immunity granted by this act, or upon failure of such official to so advise the appointing authority for a period of thirty days after his entry into the military service, shall have the power* subject to the application and limitation of any Civil Service or Merit law under which any said County may be operating *to appoint a temporary acting official who shall be clothed with all of the powers, privileges, and duties regularly exercised by the official in whose place he is acting. Such temporary acting official shall receive the same compensation, payable in the same manner and from the same source as the official in whose place he is serving."* [Italics supplied.]

Section 5 is to the effect that the tenure of any temporary acting official shall be during the absence of the regularly elected or appointed official "while in military service and until the expiration of thirty days from the date that notice in writing is given to the appointing power by the said regularly elected or appointed official of his intention to return and resume the duties of his office, at which time, the powers, privileges, and duties of such temporary acting official shall automatically end."

Sections 6 and 7 are made to apply to all officials heretofore or hereafter elected at any general election, or appointed, whether or not they have entered upon the discharge of their duties; that nothing contained in the act shall be deemed to extend the tenure of such duly elected or appointed *official* beyond the time for which he has been elected or appointed, nor shall he be entitled to compensation during the time he is absent "in the military service of the United States," nor shall any such "official be clothed with any of the powers or authority of his office while absent in the military service."

Thus the legislature recognized the provisions of the Alabama Constitution of 1901, Section 280, to the effect that no person holding an office of profit under the United States, except the class indicated, shall, during his continuance in such office, hold an office of profit under this state; nor shall any person hold two offices of profit at one and the same time under this state, except the class indicated.

Section 5 of the act makes provision as to *"The tenure of any temporary acting official"* and preserves his rights in the premises in the manner dealt with as to the official in office whose place he has taken under the provisions of the law. The act further provides that it shall be effective after passage and approval by the Governor. The Governor approved the act on November 20, 1942.

The legislative intent is apparent in every section of the act and in its title which reads as follows: "An Act *To permit county officials* of the State of Alabama *to be in the military service of the United States* at a time when there is an existing state of war between the United States of America and any other country, *without vacating their office;* and to provide for the appointment, authority, and compensation of temporary acting officials during their absence." [Italics supplied.]

The respective contentions of the parties to the instant suit may be stated in short as follows: The term of the county solicitor of Cullman County, Alabama, begins on the first Monday after the second Tuesday in January, 1943. The appellee contends that Governor Dixon had the right to appoint Mr. St. John as temporary acting solicitor of Cullman County, Alabama, on the 22d day of December, 1942, for the term beginning January 18, 1943, because Mr. Knight failed for more than thirty days following his election at the general election November 3, 1942, to advise the Governor that he desired to avail himself of the privileges and immunities of the Act No. 2.

Appellee's counsel states that, "Mr. St. John claims under a *prospective appointment* made by Governor Frank M. Dixon on December 22, 1942, to take effect on January 18, 1943, which date was the first day of the term of office here involved. * * *

"Joe V. Knight, the duly elected official, who was elected to the office of County Solicitor of Cullman County, Alabama, at the general election on November 3, 1942, was in the United States Army at the time of his election. Knight was inducted into the military service of the United States on May 6, 1942, under the provisions of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, §§ 301–318. The period for which he was inducted was until the termination of the present war and for a period of six months thereafter (Acts of December 13, 1941, 55 Stat. 799, 50 U.S.C.A.Appendix, §§ 731, 732.)." [Italics supplied.]

The appellant contends that Mr. Knight had *thirty days after he qualified as such official* within which to advise the Governor that he desired to avail himself of the privileges and immunities of the act in question. For that reason Governor Dixon's purported appointment of Mr. St. John as temporary acting solicitor is null and void, there being no existing vacancy at said time, nor could one reasonably anticipate such vacancy. The court below agreed with the appellee and appellant brings said ruling here for review.

Both parties in the instant petition seek their authority under Act No. 2, approved November 20, 1942; invoke its benefits; and rest their respective claims to a judgment under its provisions. What, then, is the legislative intent of this enabling Act? It is to be liberally construed. Its intent is clearly to meet the existing emergency, when an elected or appointed official, in the discharge of his military duty to the United States at war, is forced to leave his office vacant; and to provide for temporary acting officials to carry on and administer the functions of the federal, state, county and municipal governments during such state of war.

It was asked in argument before this court, When does an official-elect become an official within the provisions of the statutes that obtain? The case of Shepherd v. Sartain, 185 Ala. 439, 64 So. 57, 61, is answer to that question, and we quote therefrom as follows:

"* * * What is the significance of the phrase 'hold office,' as used in the constitutional provisions which the statute designs to execute?

"Judge Freeman, with his usual accuracy, thus states the effect of such provisions: 'In order to preserve a pure public policy, state Constitutions and statutes frequently provide that one and the same person shall not, at the same time, hold an office of profit or trust both under the state and under the national government, or that persons holding judicial offices shall not, at the same time, hold other offices of trust or profit, or that the same person shall not, at the same time, hold two offices of profit or trust, or the like. * * * Hence, if the holding of two offices by the same person, at the same time, is inhibited by the Constitution or statute, a forbidden incompatibility is created similar in its effect to that of the common law, and as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second office of the kind prohibited operates, ipso facto, to absolutely vacate the first office.' * * *

"It is further urged for the contestee that, in contemplation of law, Sartain has been holding the office of probate judge ever since the date of his election; the theory of this contention being that his election, and not his qualification and commission, entitled him to the office, and that the judgment of the trial court affirming his election and right to the office relates back in its operation to the beginning of the term of office in January, 1911.

"Conceding the validity of these propositions, the conclusion stated does not follow. 'Holding office,' within the inhibition under consideration, means qualifying and thereby entering into the office and assuming its obligations and becoming invested with its powers. For until one who is elected *qualifies according to law he has no more right to serve than any intruder would have,* and section 1473 of the Code expressly denounces upon him the criminal penalties imposed upon unlawful usurpers. *Holding office is* no more nor less than *filling* office, and, as said by Judge Brickell, in Scott v. Strobach, 49 Ala. 477, 485, *an office is filled only when the commission is received, the official bond executed, and the oath of office taken. * * *

"The *phrase 'hold office'* has doubtless been used in Constitutions and statutes with variant meanings, as illustrated by counsel in brief; but *we think it has but one rational meaning here.*" [Italics supplied.]

Cases from other jurisdictions have been cited to the effect that an official-elect does not become an official until he qualifies as required by law for such office. State v. McIntosh, 109 Minn. 18, 122 N.W. 462, 126 N.W. 1135; Sawyer v. Corse, 17 Gratt., Va., 230, 94 Am.Dec. 445; Archer v. State, 74 Md. 443, 22 A. 8, 28 Am.St.Rep. 261. This is what was stated by Judge Brickell in Scott v. Strobach, 49 Ala. 477, 485, and by Mr. Justice Somerville in Shepherd v. Sartain, 185 Ala. 439, 64 So. 57, supra. Further authorities on this subject from Alabama and other states are contained in 100 A.L.R. p. 1170 (III).

Several illustrations were given in argument showing the difference between an official-elect and an official of the state or county after qualification. For example, in the instant case, it was said that if it be assumed that if the instant solicitor elect never qualified for the office to which he had been elected, it could not be successfully insisted that he ever became a county official of Cullman County, and that Act No. 2 before us does not purport to extend the time in which one elected to an office may take the oath therefor, and that it merely undertakes to protect that one who took the office or was inducted therein.

That is to say, the act does not apply to such official-elect, the legislature did not intend to give it such application, and the court may not so extend or incorporate its benefits. The provisions of Section 6 of the Act are made applicable *"to all officials heretofore or hereafter elected,* at any general election, or appointed, whether or not they have entered upon the discharge of their duties," and are unambiguous.

■ The effect of this section is to limit the act in its application to officials therein designated. It is not insisted by appellant's counsel that the solicitor-elect, Mr. Knight, was required to wait until the 18th day of January, 1943, before taking the oath of office, but under the law he had the right to delay taking the oath of office until that time. Under the present state of facts and the law that obtains, he could not and did not become an official of Cullman County until the 18th day of January, 1943, and there was no vacancy in

said office until he failed or refused to take such oath of office. Under the provisions of the instant act, he had thirty days from the time he became the incumbent of the office within which to advise the Governor that he wished to avail himself of the rights, privileges and immunities of the act in question, due to his absence in the military service.

■ The legislative intent will be indicated in the construction of each section when considered in pari materia. In order for the Governor to make a valid appointment of a temporary acting official, it must appear that *there is an office* and a de jure officer thereof and that he is or will be in the military service of the United States. He must advise the Governor in writing that he has or will enter the said military service, and he desires to avail himself of the benefits, privileges and immunities granted by the act. *"Upon failure of such official to* so *advise* the *appointing authority for a period of thirty days after his entry into the military service,"* the Governor has the right to appoint.

■ The petition shows Mr. Knight's induction into the service of the United States. Thereafter he became a candidate for the office in question and was duly elected. The provisions of § 6 make the act applicable to all officials heretofore or hereafter elected or appointed *whether or not they have entered upon the discharge of their duties as such official. When the whole act is looked to* this *provision can only be applied to an official.* It merly relieves him of the duty or necessity of entering into the discharge of the duties of his office and yet retain his office for its term by due qualification. This official had the right after his election to take the oath of office at any time before his term of office began. He could not become an official before January 18, 1943. When he qualified and became such official, he advised the Governor in the premises. No vacancy in office had occurred. He had thirty days from the date of qualification to advise the Governor of his desire to avail himself of the privileges and immunities that accrued to him under the act by his election and qualification.

Mr. Knight returned to Cullman from the army on January 18, 1943, and for aught appearing was free to remain there as long as he saw fit to do so. In State v. Rice, 230 Ala. 608, 162 So. 292, 297, it was observed: "He and he alone had the inchoate right

to become the actual incumbent of the office for the term beginning in January." Said case points out that the rule permitting a prospective appointment to fill an anticipated vacancy is limited to instances in which the vacancy is sure to occur. In that case it is indicated Brandon had died before he had filed a bond or qualified as required by law, and under such facts a vacancy actually existed. In the instant case, neither the governor then in office nor any other person could say on the 22d day of December, 1942 (or on January 18, 1943), that a vacancy was sure to occur in the office of county solicitor of Cullman County, Alabama.

The fact that the office of Governor Dixon continued until midnight of January 18, 1943 [Constitution, § 116; Oberhaus v. State ex rel. McNamara, 173 Ala. 483, 55 So. 898] does not militate to a different conclusion, since there was no vacancy in the office to be filled in the instant case.

We wish to advert to the observation by appellee's counsel that grave questions are in the mind of the legal profession and those in military service as to the effect of entering into the military service on the tenure of office of persons of all classes.

Code 1940, T. 41, § 5(6) and (7) provides that a person in the regular army or navy of the United States is not eligible to hold public office in Alabama, and that no person holding an office of profit under the United States shall, during his continuance in such office, hold an office of profit under this state. It is further noted by appellee's counsel that in Baxter v. State ex rel. Metcalf, 243 Ala. 120, 9 So.2d 119, attention was called to the fact that questions involved were vital to the status of the public officer in the military service of the United States of America. The question now presented was not passed on in that case.

In view of the foregoing and the other observations made herein, it would be an oversight on the part of this court, in the light of what the Legislature of Alabama has done in passing the three acts protecting officials of the state, county and municipality who go into the military service (said acts adverting to the Constitution and its § 280) not to declare the constitutionality of the act in question as its inspection clearly indicates, in relation to Section 280 of the Constitution of Alabama.

The general rule held to obtain in this and in other courts is that we do not declare an act of the legislature *unconstitutional* unless: (1) it is necessary to a determination of the rights of the parties involved in a cause properly before this court and then only when the contention is made; or (2) it is done in response to an inquiry made under legal authority; or (3) it is done in a declaratory judgment as also provided by law.

When an act is relied on to sustain a contention in a suit under consideration, and both parties seek its interpretation and application, with no attack upon its validity, such treatment by this court is or may be sometimes considered as an approval of its constitutional validity, though that would not be the proper view of our treatment of it. In order that we may not be impliedly approving the constitutionality of the act in this suit, *and since we do so in fact,* we have thought it advisable to express our reasons for such opinion, and thereby *put at rest a question of* great public interest, which is itself justification for this viewpoint.

The instant parties rest their right upon the inference of the constitutionality of the act which contains provisions not in accord with a decision of this court in Chisholm v. Coleman, 43 Ala. 204, 94 Am.Dec. 677.

The dual citizenship of the nation and state, county or municipality and rights and duties under the impending national crises demand that no doubt exist as to the validity of the act before us. A later judgment of unconstitutionality would affect the county, the successful party here and the successor in office within the term of office. It is, therefore, a matter of great public moment. Under a later adverse ruling the status of the parties would not be the same if the statute were held unconstitutional. Smith v. McQueen, 232 Ala. 90, 166 So. 788; James v. State, 15 Ala.App. 89, 72 So. 585.

The question is thus treated in 16 C.J.S., Constitutional Law, § 94, p. 207, where it is stated that, "As a general rule, the constitutionality of a statute will be passed on only if, and to the extent that, it is directly and necessarily involved in a justiciable controversy and is essential to the protection of the rights of the parties concerned.

"* * * It is only where rights, in themselves appropriate subjects of judicial cognizance, are being, or are about to be, affected prejudicially by the application or enforcement of a statute, and where the

278

court has jurisdiction over the substance of the suit, that its validity may be called in question and determined by an exercise of the judicial power. Indeed, it is well-settled that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question. * * * [Cooper v. Hawkins, 234 Ala. 636, 176 So. 329, 330, citing Corpus Juris; Smith v. McQueen, 232 Ala. 90, 166 So. 788; Williams v. State, 28 Ala.App. 73, 179 So. 915, certiorari denied 235 Ala. 520, 179 So. 920; Barrett v. State, 18 Ala.App. 246, 90 So. 13, certiorari denied 206 Ala. 698, 90 So. 925]".

In Sarlls v. State ex rel. Trimble, 201 Ind. 88, 166 N.E. 270, 275, 67 A.L.R. 718, 727, 728, analogy is found in the following observation: "The constitutionality of a statute will not be determined unless it is necessary to do so in order to determine the merits of the suit in which such constitutionality has been drawn in question. * * It is true that this case can be decided without going into the constitutional questions, but we believe that the merits of the controversy before us cannot be completely determined without a consideration of such questions. The constitutional questions have been exhaustively briefed by both parties, and in view of their manifest public importance, of the fact that an ultimate decision of them must some time be arrived at in this court, and of the holding of our own court that a public officer cannot be compelled to obey a statute that is unconstitutional, even when he is sued in mandamus * * *, we shall proceed to a consideration of whether the entire act is unconstitutional by reason of the alleged unconstitutionality of various sections thereof."

The writer conceives it to be the duty of this court, where an inspection of an act indicates its constitutionality, to so declare and dispose of any supposed conflict.

In Cooper v. Hawkins, 234 Ala. 636, 176 So. 329, 330, Mr. Justice Bouldin admits that there are exceptions to the general rule in his observation as to unconstitutional acts, " * * * unless the act is so palpably void on constitutional grounds that the court, for the protection of public interests, deem it wise to sound the alarm by calling attention to such status * * *." And by the same token, where

an act is so palpably valid and constitutional, to protect the public interest, it is wise to so declare. Such is the status of the instant question. The sounding of alarm in the Cooper case as to the unconstitutionality of the act is the necessity while in the instant case the necessity is for the announcement of its patent constitutionality.

In Cooper v. Hawkins, 234 Ala. 636, 638, 176 So. 329, 330, Mr. Justice Bouldin observes:

" * * * An act of the Legislature, the constitutional lawmaking body, whose acts are presumed even by the courts to be valid until brought in question in a case where a decision of their constitutionality is essential to a decision of the cause. In such case, the courts, out of respect for the acts of a co-ordinate branch of the government, and because of the utter impracticability of considering every constitutional question that may arise touching a legislative act, consider only the constitutional objections raised in the cause, unless the act is so palpably void on constitutional grounds that the court, for the protection of public interests, deems it wise to sound the alarm by calling attention to such status. * * *

"For full array of authorities, including other Alabama cases, see 12 C.J. p. 780, § 212(3), and notes; also p. 785, § 216(2), and notes."

Upon examination of the many authorities indicated in 12 Corpus Juris, p. 780, § 212(3) and p. 785, § 216(2); 16 C.J.S., Constitutional Law, § 94 and § 96, it is observed that the reason for this rule is stated as follows:

" * * * 'The decision of a question involving the constitutionality of an act of Congress is one of the gravest and most delicate of the judicial functions, and while the court will meet the question with firmness, where its decision is indispensable, it is the part of wisdom, and a just respect for the legislature renders it proper, to waive it, if the case in which it arises can be decided on other points.' Ex parte Randolph, 20 Fed.Cas. [page 242] No. 11558, 2 Brock 447. (2) 'While Courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more proper and more respectful to a co-ordinate

department, to discuss constitutional questions only where that is the very lis mota.' Hoover v. Wood, 9 Ind. 286, 287."

We note the text that if the facts alleged or proven in the particular case are such that the case may be decided without passing on the constitutional question or the verdict or judgment is such that the unconstitutionality of the statute would not affect the rights of the complaining parties (Ex parte Steverson, 177 Ala. 384, 58 So. 992; James v. State, 15 Ala.App. 89, 72 So. 585), the court will not consider the question of the constitutionality of the statute, although it may do so where the real purpose of the suit is to test the constitutional question. The note to such text further recognizes in an important or proper case that though the statute is not questioned as to its constitutionality by the parties, there are recognized exceptions to the rule, as where the real purpose of the quo warranto proceeding is to test the validity of an adoption of an amendment to the constitution under which defendant holds office. It has been held that the court will decide the constitutional question *even though the case could be disposed of on other grounds.* State v. Jones, 106 Miss. 522, 64 So. 241.

In Hunter v. Colfax Cons. Coal Co., 175 Iowa 245, 154 N.W. 1037, 1048, 157 N.W. 145, L.R.A.1917D, 15, 15 Ann.Cas.1917E, 803, is the observation that "In such circumstances, we would ordinarily decline to consider whether other features of the statute are open to constitutional objections. But as the reluctance of the courts to make inquiry into the power of the Legislature to act is, after all, a mere rule of comity between co-ordinate departments of the government, and as the parties have fully argued all objections to the act, and have expressed a desire that the entire controversy be passed upon, and say that so to do is desirable for the good of the public, and as, owing to the full presentation, what we shall say cannot be treated as obiter, we have concluded that we should not here insist upon this rule of comity—and we proceed to entertain the entire submission."

The latest consideration of the subject is found in 16 C.J.S., Constitutional Law, p. 214, § 94, where it is observed: "On the other hand, the determination of a constitutional question is necessary and proper whenever it is essential to the decision of the case, as where the right of a party is founded solely on a statute, the validity of which is attacked. It has been further held that the court may, in a proper case, *pass on constitutionality, even though another ground of decision is open,* as *where* the *real purpose* of the suit *is to test* the *constitutional question,* or where the matter is of *manifest public importance* requiring a precedent for the future guidance of officials and citizens in their conduct with reference to the statute, and the question has been sufficiently argued before the court, *especially if* the conclusion of the court is one *favorable to constitutionality* of the statute. * * * [Ex parte Lewis, 101 Fla. 624, 135 So. 147; Sarlls v. State, 201 Ind. 88, 166 N.E. 270, 67 A.L.R. 718]." [Italics supplied.]

■■ In passing on the constitutionality of the question now before us, influenced by Section 280 of the Constitution, which is of such great and unusual public moment, I herewith incorporate the observations of Mr. Justice FOSTER that are most pertinent, and to my mind conclusive of the constitutionality of the Act No. 2, approved November 20, 1942, as follows:

"Prior to the Fourteenth Amendment to the Federal Constitution, citizenship of the United States was not expressly declared nor emphasized in the Constitution. 12 Am.Juris. 98, 99, § 451; Slaughter House Cases, 16 Wall. 36, 21 L.Ed. 394.

"But citizenship was primarily of the state of one's residence. The Fourteenth Amendment, however, emphasized national citizenship as of primary importance with state citizenship as secondary. It also prohibits a state from abridging the privileges and immunities of citizens of the United States.

"Therefore, when by Article 1, Section 8(11) and (12) Congress is given the right to declare war and raise an army, the duty of the citizen of the United States, for the privileges and immunities thus protected, is more emphatic. Congress cannot raise an army without soldiers. It has absolute power to call into such service any of its citizens. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; 36 Am.Juris. 198, § 22. When so the duty of citizenship requires an obedience to that call. It is imperative. As a state cannot abridge the privileges or immunities of a citizen of the United States, so it cannot impede or burden the performance of a duty which a citizen owes to the United States created by federal law nor prescribe a penalty for so doing. The federal law

constitutionally enacted is the supreme law of the land. United States Constitution, Article VI, cl. 2. A state cannot sustain a law which would attempt to take precedence over such act. Ex parte Bolling, 39 Ala. 609; 129 A.L.R. 1175.

"Section 280 of the Alabama Constitution of 1901 prohibits a person while continuing in an office of profit under the United States (except certain postmasters) from holding an office of profit under this state. See Section 5(7), Title 41, Code 1940; Shepherd v. Sartain, 185 Ala. 439, 64 So. 57; 100 A.L.R. 1183; 40 A.L.R. 650; 26 A.L.R. 143; 89 A.L.R. 1113.

"In Chisholm v. Coleman, 43 Ala. 204, 205, 94 Am.Dec. 677, a circuit judge was elected and qualified as such in Alabama before its secession. After is secession he entered the military service of the Confederacy, and received pay therefor; it was held that he vacated his office. He did not respond to the call of the same federal authority under which the state existed in which he held the office of circuit judge. But he responded to an authority which was at war with the nation of which his state was a part when he accepted the office. See 100 A.L.R. 1170.

"If our Constitution and statutes are construed to mean that when a state officer is called into the United States Army as an officer of profit under it, he thereby vacates any state office he may hold, they thereby penalize an act which is not voluntary on the part of the officer, but is the performance of a duty of citizenship of the United States.

"And so if the United States is at war and needs in its armies citizens who may be holding a state office, there is a duty cast on such citizens of the United States to join the army, if his services are needed and desired, and he is duly qualified, and a voluntary performance of that duty cannot be impeded by a state nor a penalty or sanction imposed on him for so doing. 36 Am. Juris. 199, Note 4.

"A duty which a citizen owes to the United States being voluntarily discharged is not subordinate to any duty which he owes his state and cannot be the subject of unfavorable state legislation.

"So that a state cannot cause a vacancy in a state office, because its officer has become a military officer on pay in the army of the United States at war, while thus serving, but it can by law withhold compensation while not performing the duties of his office, and cause them to be performed by another.

"The Supreme Court of Louisiana has taken a similar view of this situation. State v. Joseph, 143 La. 428, 78 So. 663, L.R.A. 1918E, 1062. And so has that of Florida. In re Advisory Opinions, Fla., 8 So.2d 26, 140 A.L.R. 1481; Id., 9 So.2d 172, 140 A.L. R. 1492; also California. McCoy v. Los Angeles, 18 Cal.2d 193, 114 P.2d 569. See 140 A.L.R. 1499 et seq.

"Without reference to a state of war and the burdens and duties incident to it, Illinois has treated the subject in Fekete v. City of East St. Louis, 315 Ill. 58, 145 N.E. 672, 40 A.L.R. 650; and so has Kentucky in Kennedy v. Cook, 285 Ky. 9, 146 S.W.2d 56, 132 A.L.R. 251, and so has Texas in Lowe v. State, 83 Tex.Cr.R. 134, 201 S.W. 986.

"In those cases the government was not at war, but was only training an army. Enlistment in it was not a duty owing by a citizen to the government, but was an exercise of free choice taken by a state officer with knowledge of the situation.

"Whereas the Louisiana, Florida and California cases, supra, emphasize the fact that constitutional provisions such as our Section 280 do not contemplate a state of war and the consequent duties of citizenship to the United States, which take precedence over a state's laws or its constitution."

It follows from the foregoing that the act in question is not offensive to Section 280 of our Constitution of 1901 and for the reasons we have indicated is constitutional.

A judgment is here rendered adjudging that the plaintiff Earney Bland, the solicitor appointed under the Act in question, is entitled to exercise the powers and functions of said office. A judgment is further rendered ousting the said Finis E. St. John, Sr., from said office, and from holding the same and exercising the powers and privileges thereof.

The costs in this proceeding are taxed against said respondent.

Reversed and rendered.

All the Justices concur in the opinion except BROWN, J., who concurs specially.

BROWN, Justice (concurring specially).

The act creating the elective office of county solicitor for Cullman County [Local Acts 1935, p. 196] provides: "The County

Solicitor hereby created shall be elected by the qualified voters of said county at the general election to be held in November, 1938 and each four years thereafter. Such solicitor shall hold office for a term of four years beginning on the first Monday after the second Tuesday in January, 1939, *and until his successor is elected and qualified.* The term of such office shall be four years." Construing this language to mean that said term begins on the first Monday after the second Tuesday and ends on Sunday at 12 m., four years hence, the tenure of the incumbent St. John, who was appointed to fill the unexpired term of Kinney, continued over until Knight qualified. Hence there was no vacancy in the office of county solicitor during the incumbency of Governor Dixon which he could fill under his constitutional appointing power.

I am further of the opinion that the language of Act No. 2 [Special Session 1942, § 3], "or upon failure of such official to so advise the appointing authority for a *period of thirty days after his entry into the military service, shall have the power * * ** to appoint a temporary acting official," is prospective in its scope and operation and does not apply to persons in the army at the time of the passage of the act. Hence the fact essential to quicken into existence the governor's special statutory power under said act did not exist at the time he undertook to exercise that power, and the appointment of Mr. St. John was void.

The constitutionality of said Act No. 2 was not raised on the trial, nor argued on submission, and both parties are asserting their rights under it. Hence I take no part in the treatment of that question. Any expression on that subject is bound to be a mere gratuitous dictum. Nor do I agree with the thought that there is any difference between declaring an act constitutional and declaring it not unconstitutional.